460 S.E.2d 663

Peter Vincent DeROCCHIS and Juditl. DeRocchis, Plaintiffs Below, Appellants,

v.

MATLACK, INC., a Foreign Corporation, and Leo Boats, Defendants Below, Appellees,

and

Strick Corporation, Third–Party Defendant Below, Appellee.

No. 22594.

Supreme Court of Appeals of West Virginia.

Submitted May 3, 1995.

Decided July 11, 1995.

418

Robert P. Fitzsimmons, Russell Jay Guthrie, Fitzsimmons Law Offices, Wheeling, for appellants.

Ernest A. Petroff, P. Edward Pratt, Baker, Worthington, Crossley & Stansberry, Knoxville, TN and Frank X. Duff, Yolanda G. Lambert, Schrader, Recht, Byrd, Companion & Gurley, Wheeling, for appellees, Matlack, Inc., and Leo Boats.

James R. Hartline, Thomson, Rhodes & Cowie, P.C., Pittsburgh, PA, for appellee, Strick Corp.

FOX, Judge: [1]

Peter Vincent DeRocchis and Judith DeRocchis, his wife, the appellants, sued Mr.

1. Pursuant to an administrative order entered by this Court on 18 November 1994, the Honorable Fred L. Fox, II, Judge of the Sixteenth Judicial Circuit, was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing 1 January 1995 and continuing through

DeRocchis' employer, Matlack, Inc., and Leo Boats for respiratory injuries which Mr. DeRocchis claimed he sustained as a result of being exposed to tolulene diisocyanate in the course of his employment from 1972 until the time of the filing of the complaint.[2] The Circuit Court of Marshall County awarded the defendants summary judgment on the ground that the DeRocchises' action was barred by the statute of limitations. In the present appeal, the DeRocchises allege that the trial court erred by utilizing the wrong date in determining when the limitations period began running and had the proper date been utilized, their civil action would not have been barred by the statute of limitations. After reviewing the questions presented and the record, we believe that the appellants' complaint was timely filed as to any tortious acts committed within two years before the filing of their complaint. We also believe that the DeRocchises' claim is barred as to any act committed more than two years before the filing of the complaint.·

The record indicates that Peter Vincent DeRocchis worked as a chemical truck driver for Matlack, Inc., from 1972 until the time he filed his complaint on 17 April 1990. During that time, he was exposed to tolulene diisocyanate fumes on a number of occasions and, as a result, developed a sensitivity to those fumes.

In March or April 1989, while Mr. DeRocchis was delivering an isocyanate to a facility owned by the appellee, Strick Corporation, a large spill occurred, and Mr. DeRocchis was again exposed to isocyanate fumes.

In September 1989, Mr. DeRocchis, who was a member of the National Guard, underwent a physical examination in conjunction with his military service. In the· course of the examination, he was administered a pulmonary function test, and the test showed diminished pulmonary function. As a conse-quence, he was discharged from the National Guard.

On 23 April 1990, Mr. DeRocchis filed the complaint which is involved in the present appeal. He alleged that his employer, Matlack, Inc., had, among other things, failed to warn him about the effects of isocyanates, had failed to provide him with adequate instruction on the handling of the substances, had failed to provide him with proper safety equipment, and had failed to provide an adequate program to protect him. In the complaint he also made similar claims against Leo Boats.

After being served with the complaint, Matlack, Inc., filed a third-party complaint against Strick Corporation. In that complaint, Matlack, Inc., alleged that any injuries to Mr. DeRocchis were caused by the acts or omissions of Strick Corporation, its agents, servants, workmen, and employees.

Extensive discovery was conducted. In a deposition, Mr. DeRocchis testified that he first realized that he had become sensitized to tolulene diisocyanate in 1975. In discussing what triggered his realization, Mr. DeRocchis testified as follows:

Q: And what triggered that if you recall?

A: Having to go to the hospital and see what was causing me to have a little difficulty breathing.

   *    *    *    *    *    *

I was being examined by Dr. Heceta at the time and he detected a slight wheeze and admitted me to the hospital ...

   *    *    *    *    *    *

Q: What did you tell him [Dr. Heceta] about what you thought caused ... [the respiratory problems]?

A: Work conditions.

Q: What specific work conditions?

---

31 March 1995, because of the physical incapacity of Justice W.T. Brotherton, Jr. On 14 February 1995 a subsequent administrative order extended this assignment until further order of said Court.

**2.** Matlack, Inc., was Mr. DeRocchis' employer; Leo Boats was the terminal manager for the facility out of which Mr. DeRocchis worked, and was responsible for training, warning, and distributing safety equipment to Mr. DeRocchis. Strick Corporation owned a place of business at which a tolulene diisocyanate spill occurred in March or April, 1989 (the precise date is unclear from the record presented), and was brought in as a third party defendant.

A: He asked me what type of job I did and I told him I drove a truck for Matlack and he asked me what it covered and I said we hauled isocyanates. . . .

Mr. DeRocchis further testified that as early as 1978 or 1979 he knew that isocyanates, in general, and tolulene diisocyanate, in particular, could cause serious respiratory problems.[3] Also, evidence was introduced showing that Mr. DeRocchis had filed a workers' compensation claim for an occupational injury dated 31 March 1983. On that claim, the claimant's physician identified Mr. DeRocchis' injury as being "inhalation of dangerous chemical fumes. Affected throat and lung."

Discovery also revealed the following notation in medical records made by Dr. Heceta in 1975:

[Mr. DeRocchis] has been in perfect health except for the past 3 years he has been noticing increasing shortness of breath and wheezing on and off. He . . . now is a truck driver where they transport some fumes, he calls "isocyanates."

In other notes made in 1975, Dr. Heceta said the following about Mr. DeRocchis:

Chief Complaint: Shortness of breath . . . He claims he is a truck driver and that he transports some fumes he calls "isocyanates."

Review of Symptoms: Essentially normal except for the respiratory system where he has some wheezing in the mornings as well as progressive shortness of breath not associated with any chest pain.

Other evidence showed that a "Proventil" inhaler was prescribed for Mr. DeRocchis in 1983 and that that prescription was later refilled. The Proventil inhaler was designed to counteract certain of the effects of exposure to isocyanate fumes.

---

3. He testified as follows:
Q: When did you first make that association?
A: That I knew T.D.I. could cause respiratory problems?
Q: Right.
A: As far as myself?
Q: Or as far as anybody in general.
A: It was on the M.S.D.S. sheets I believe.
Q: When was that?
A: That Mobay put out, I don't recall when they started coming out.

After substantial discovery had been completed, the defendants filed a joint motion for summary judgment. The circuit court, after taking the motion under consideration, granted it on 3 May 1994. In the memorandum order granting summary judgment, the trial court stated:

The Defendants' Motion is supported by a depositional transcript, medical reports regarding the plaintiff, Peter DeRocchis, from the Bellaire Medical Group (January 25, 1975), Dr. W. Heceta, M.D. (February 4, 1975), Bellaire City Hospital (February 5, 6 and 7, 1975), Workers' Compensation Forms and Billings (1975, 1983), and additional medical records regarding the Workers' Compensation claims.

The plaintiff contends that the condition and injury which are the subject of this litigation occurred in April of 1989 and that "he knew or by the exercise of reasonable diligence should have known of the existence of his injury only after April of 1989."

However, it appears that Mr. DeRocchis has known since at least 1975 that he was sensitized to isocyanates; that since 1978–1979 isocyanates could cause respiratory problems; that in 1975 Mr. DeRocchis filed a workers' compensation claim for injury associated with exposure to isocyanates; that in March, 1983, he filed a workers' compensation claim for injury associated with exposure to isocyanates; and that Mr. DeRocchis has been receiving medication for isocyanate related problems since at least 1982.

This court would concur that plaintiffs urge West Virginia to adopt, in addition to the "discovery of the injury rule," another rule entitled "discovery of seriousness of the injury rule."

Q: Can you give me just a—
A: Ball park?
Q: Ball park.
A: 1979, 1978–79 I believe. It might have been a little earlier than that.
Q: I beg your pardon?
A: It might have been somewhat earlier than that. Certainly '78–79.

"... Consonant with the spirit of this rule, this Court has previously held, upon ample supporting authority, that to successfully resist a motion for summary judgment, the party against whom it is made must present some evidence to indicate to the court that facts are in dispute, when the moving party's evidence shows no disputed facts. The mere contention that the issues are disputed is not sufficient to deter the trial court from the award of summary judgment." SEE *BRADY V. REINER,* 157, W.Va. 10, 198 S.E.2d 812 (1973); *MILLER V. HATTON,* 184 W.Va. 765, 403 S.E.2d 782 (1991). The record in the instant case is lacking oppositional affidavits or other means of expressing a factual controversy by the plaintiffs.

The controlling case is *JONES VS. THE TRUSTEES OF BETHANY COLLEGE, et al.,* [177 W.Va. 168] 351 S.E.2d 183 (W.VA.1986) granting and affirming summary judgment dismissal of an untimely personal injury lawsuit. The longest controlling statute of limitations here is a two-year statute. The opinion conforms with this case law.

In the present proceeding, the appellants contend that the lower court erred in granting summary judgment on the basis of the statute of limitations, inasmuch as they filed their complaint for personal injuries approximately one year after receiving the injuries.

In *Aetna Casualty and Surety Company v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court discussed at some length the circumstances under which summary judgment could appropriately be granted in a civil action in West Virginia. In syllabus point 3 of that case, the Court stated its conclusion as follows:

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*See Lowery v. Raptis,* 174 W.Va. 736, 329 S.E.2d 102 (1985); *Karnell v. Nutting,* 166 W.Va. 269, 273 S.E.2d 93 (1980); *Consolidated Gas Supply Corp. v. Riley,* 161 W.Va. 782,

247 S.E.2d 712 (1978); and *Anderson v. Turner,* 155 W.Va. 283, 184 S.E.2d 304 (1971).

Furthermore, the Court recently explained, in syllabus point 4 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), that:

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

As previously indicated, the propriety of the trial court's entry of summary judgment in the present case hangs on the question of whether the DeRocchises' case was barred by the statute of limitations.

West Virginia Code § 55–2–12 establishes the limitation period for personal injury actions in West Virginia. The relevant portion of that statute provides:

Every personal action for which no limitation is otherwise prescribed shall be brought: ... (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries....

As a general proposition, the limitations period begins to run from the date of the injury. *Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183 (1986); *State ex rel. Ashworth v. State Road Commission,* 147 W.Va. 430, 128 S.E.2d 471 (1962); and *Boyd v. Beebe,* 64 W.Va. 216, 61 S.E. 304 (1908). This general rule is summarized in syllabus point 1 of *Jones v. Trustees of Bethany College, supra:* "The statute of limitations ordinarily begins to run when the right to bring an action for personal injuries accrues which is when the injury is inflicted."

There are, however, a good many exceptions to this rule. For instance, where injury is not immediately known or discoverable, the statute of limitations begins to run when the injury is discovered or should have been discovered by the exercise of due diligence. *Stemple v. Dobson,* 184 W.Va. 317, 400 S.E.2d 561 (1990).

Other problems arise where elements of a tort do not occur or manifest themselves within a brief, discrete period. Two situations involving these circumstances have recently been addressed by this Court.

In the first, discussed in *Jones v. Trustees of Bethany College, supra,* the Court dealt with the situation where, within a brief, discrete period of time, a plaintiff suffered a noticeable injury, but for a substantial period thereafter the plaintiff suffered a worsening of his condition. In the second situation, discussed in *Handley v. Town of Shinnston,* 169 W.Va. 617, 289 S.E.2d 201 (1982), both the noticeable, negligent agency of injury and the noticeable injury itself persisted and worsened over a period of time.

In the present case, the trial court was persuaded that *Jones v. Trustees of Bethany College, supra,* controlled the determination of when the limitations period began to run. In that case, the Court stated, in syllabus point 3:

> Where a plaintiff sustains a noticeable personal injury from a traumatic event, the statute of limitations begins to run and is not tolled because there may also be a latent injury arising from the same traumatic event.

In the body of that case, the Court explained the circumstances to which this rule applied in somewhat more detail. The Court, quoting *Albertson v. T.J. Stevenson & Co.,* [749 F.2d 223, 231 (5th Cir.1984) ] recognized that:

> The traumatic event/latent manifestation case is one in which the plaintiff has sustained both immediate and latent injuries caused by a noticeable, traumatic occurrence. At the time of the traumatic event, the plaintiff realizes both that he is injured and what is responsible for causing the injury. The full extent of the harm, however, has not become manifest.

The Court also stated:

> There are sound reasons for applying the ordinary period of limitations for personal injuries where the plaintiff has received through a traumatic event some immediate injury even though he is not aware of the of the full extent of this injury.

177 W.Va. at 171, 351 S.E.2d at 186.

■ In the present case, it appears that the appellant, Peter Vincent DeRocchis, sustained a number of discrete injuries and that, in effect, he was exposed to isocyanate fumes on a number of different discrete occasions. The last occasion was in 1989. He had obvious injuries from his various exposures, and he may have had latent injuries.

The Court believes that the trial court did not err in concluding that the evidence showed that Mr. DeRocchis was involved in a number of traumatic event/latent manifestation situations, as was the plaintiff in *Jones.* Certainly, long prior to the 1989 spill Mr. DeRocchis knew, or reasonably should have known, that he had been traumatically exposed to isocyanate fumes and that the exposures had affected him in a medically deleterious manner. The full extent of the harm, however, may not have become manifest.

In this Court's view, the trial court was correct in reasoning, given the structure of the facts adduced, that *Jones v. Trustees of Bethany College, supra,* did apply and did control the defendants' liability on the exposures which occurred before 1989.

There is, however, an important distinction between the present case and the classic traumatic event/latent manifestation case discussed in *Jones v. Trustees of Bethany College, supra.* In the *Jones* case, there was a single traumatic event which occurred at a time barred by the limitations period. In the present case, there were a number of traumatic events, most of which, and possibly all of which, except for the 1989 exposure, occurred at a time barred by the limitations period. In effect, there were a number of separate personal injuries, and a number of actions for personal injury, which occurred. The 1989 event, having occurred within two years of the filing of the complaint in the instant civil action, is not barred by the statute of limitations.

■ The *Jones* case does not say that a party whose action for one traumatic event is barred for his failure to assert his claim within the limitations period is barred by the

dereliction from asserting, so long as he acts in a timely manner, a similar claim for a similar, but separate, traumatic act which later occurs. In such situations, the question of whether the limitations period has run must be addressed in each cause of action without reference to what the plaintiff did in the other cause of action. In essence, when, in the course of employment, a person receives a number of similar, but separate, injuries, each injury gives rise to a separate and distinct cause of action. Further, the statute of limitations for each cause of action begins to run from the date of the injury giving rise thereto, without regard to any previous injury or injuries.

Given the rule set forth in *Jones v. Trustees of Bethany College, supra,* and given the peculiar facts of the present case, the Court cannot conclude that the trial court erred in holding that the claims for traumatic events which occurred more than two years before the filing of the DeRocchises' complaint were barred by the statute of limitations. The Court believes, however, that the 1989 event was a separate event, and the claim for that event (as well as the claim for any other event which occurred within two years prior to the filing of the complaint) was timely asserted and that the trial court erred in holding that it was barred by the statute of limitations. The 1989 event was, in effect, a separate event governed by the general rule that the limitations period begins to run from the date of the injury.[4]

For the reasons stated, the judgment of the Circuit Court of Marshall County is reversed insofar as it relates to the 1989 event and any other causes of action which allegedly occurred within two years prior to the filing of the DeRocchises' complaint. The judgment of the circuit court is affirmed insofar as it relates to any causes of action alleged which occurred more than two years prior to the filing of the complaint. This case is remanded for further development on the claim or claims which remain viable.

Reversed in part, affirmed in part, and remanded.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., sitting by temporary assignment, deeming himself disqualified, did not participate in the consideration or decision in this case.

FOX and BERGER, Judges, sitting by temporary assignment.

---

4. In engaging in this discussion, the Court is aware that in the past it has dealt with the concept of a "continuing cause of action" where the trauma, continuing over a period of time, is so reasonably continuous as to be treated as a single traumatic event. *See Handley v. Town of Shinnston,* 169 W.Va. 617, 289 S.E.2d 201 (1982). The Court conceives a "continuing cause of action" as being a situation where events, which for all practical purposes are identical, occur repeatedly, at short intervals, in a consistent, connected, rhythmic manner.

In the present case, the facts developed suggest the traumatic events, Mr. DeRocchis' exposure to isocyanate fumes, occurred in such a sporadic and nonconsistent way as to constitute separate causes of action.