469 S.E.2d 104

**Lewis R. AUBER and Jo–Ann Auber, Plaintiffs Below, Appellants,**

**v.**

**A.V. JELLEN, M.D. and A.V. Jellen, M.D., P.C., Defendants Below, Appellees,**

**and**

**Lewis R. AUBER and Jo–Ann Auber, Appellants,**

**v.**

**INSURANCE CORPORATION OF AMERICA, a/k/a ICA, a Texas Corporation, Appellee.**

No. 22879.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 9, 1996.

Decided March 1, 1996.

**170**

Robert P. Fitzsimmons, Russell Jay Guthrie, Fitzsimmons Law Offices, Wheeling, and G. Charles Hughes, G. Charles Hughes, L.C., Moundsville, for Appellants.

Landers P. Bonenberger, McDermott, Bonenberger, McDermott & Gallaway, Wheeling, for Appellees, A.V. Jellen, M.D. and A.V. Jellen, M.D., P.C.

James F. Companion, Yolanda G. Lambert, John Porco, Schrader, Byrd, Companion & Gurley, Wheeling, for Appellee, Insurance Corporation of America.

ALBRIGHT, Justice:

This is an appeal from a declaratory judgment entered by the Circuit Court of Ohio County. The principal question raised by the appeal is whether the medical malpractice insurance policies issued to appellees, A.V. Jellen, M.D. and A.V. Jellen, M.D., P.C., a professional corporation through which Doctor Jellen apparently conducted his medical practice, provide a single policy limit or may be aggregated to provide a greater sum of coverage with respect to a series of five misdiagnoses made by Doctor Jellen with regard to appellant, Lewis R. Auber. Additional issues are whether appellants, Lewis R. Auber and Jo–Ann Auber, his wife, are entitled to prejudgment interest from the date of a settlement agreement giving rise to the declaratory judgment and whether they are entitled to an award of attorney's fees incurred in obtaining the declaratory judgment.

The trial court found that coverage of $500,000 was afforded by one of the policies with respect to the first misdiagnosis, that coverage was afforded by a second policy with respect to the remaining four misdiagnoses, that the four misdiagnoses so covered involved one "incident" under that policy, that the policy limit for one "incident" of $1,000,000 applied under that policy and, in effect, that the applicable policy limits of the two policies could be aggregated, resulting in coverage in the total sum of $1,500,000. The trial court further concluded that prejudgment interest was not payable and that attorney's fees may not be awarded.

Appellants claim that, in addition to the policy limit provided by the first policy for the first misdiagnosis, they are entitled to treat the four misdiagnoses covered by the second policy as four separate "incidents", invoking a higher aggregate limit for multiple "incidents" stated in that policy and that, as previously stated, they are entitled to prejudgment interest and an award of attorney's fees for having substantially prevailed in the declaratory judgment. We disagree and, accordingly, we affirm the judgment of the Circuit Court of Ohio County.

Doctor Jellen first saw Mr. Auber in 1983, but the matters relevant here commenced in 1985. On December 2, 1985, appellant was examined and diagnosed with pain in the

entire lower abdomen. On December 5, 1986, appellant was examined and diagnosed with acute anal fissure. On June 5, 1987, appellant was examined and diagnosed with joint dysfunction, lumbar, or JDF lumbar plus SI joints with acute facet joint syndrome. On August 12, 1987, appellant was examined and diagnosed with spastic colon with severe chronic constipation. On August 23, 1987, appellant was examined and diagnosed with febrile infection, possibly caused by diverticulitis.

In October, 1987, Doctor Jellen referred appellant to Ahmed H. Kalla, M.D., who is a colon and rectal surgeon. Doctor Kalla performed a pathology examination and diagnosed appellant as having adenocarcinoma of the rectum, or rectal cancer. Appellant underwent surgeries, treatments, and hospitalizations for the condition diagnosed by Doctor Kalla. He is now disabled and unable to run his business, a retail tire store which he had owned and operated for some years.

Appellants, Lewis R. Auber and Jo-Ann Auber, filed a civil action in the Circuit Court of Ohio County on October 2, 1989, against A.V. Jellen, M.D. and A.V. Jellen, M.D., P.C., the previously mentioned professional corporation. The complaint alleged that Doctor Jellen injured appellants by reason of medical malpractice. Particularly, appellants' complaint alleged that Doctor Jellen failed to properly diagnose rectal cancer on the occasion of the five separate examinations previously detailed in this opinion.

In the course of that action, the parties agreed by stipulation that when Doctor Kalla performed surgery in October, 1987, Doctor Kalla's opinion, to a reasonable degree of medical certainty, based upon the size of the tumor and type of cancer, was that the tumor and cancer had been present in Mr. Auber for more than two years, thus placing the onset of the cancerous condition prior to Doctor Jellen's first examination of Mr. Auber on December 2, 1985.

Also, during the pendency of the malpractice action, appellants asked appellees how much insurance coverage was available. Doctor Jellen's insurance carrier, Insurance Company of America (ICA), represented that the policy limit applicable to the malpractice

action was $500,000. Appellants disputed that representation. In April and May, 1992, the parties negotiated a settlement of the malpractice action.

Under the negotiated settlement, ICA paid appellants $500,000 and appellants delivered to appellees an "Agreement of Release" dated May 28, 1992, which contained a general release of the defendants in the civil action, a release of any "bad faith" claim which appellants might have against the defendants' insurer and a section denominated "Settlement Terms". The release provided that *appellants* "will proceed to file a declaratory judgment action in the Circuit Court of Ohio County, West Virginia, the purpose of which is to determine if A.V. Jellen, M.D., and A.V. Jellen, M.D., P.C., possess any additional medical liability insurance coverage with Insurance Corporation of America applicable to this claim, aside from the Five Hundred Thousand Dollars and No/100 ($500,000.00)" paid incident to the settlement. The settlement further provided that:

> At the conclusion of the declaratory judgment action *and after the exhaustion of any and all appeal rights following,* if it is determined that additional coverage is available, Insurance Corporation of America, will pay that coverage amount so determined, up to but not exceeding an additional One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00). (Emphasis added.)

Appellants filed the petition for a declaratory judgment, as provided for in the settlement, on May 7, 1992, after the parties had at least verbally agreed to the settlement, although the release reducing the settlement terms to writing bears the date of May 28, 1992. ICA filed an answer to the petition for declaratory judgment in which it claimed that the limit of its liability arising from the malpractice action was $500,000, the amount paid at settlement. ICA admitted to that amount of liability by reason of a policy issued to Doctor Jellen by ICA for the policy period from January 1, 1985 to January 1, 1986. Further, ICA admitted that it had sold additional policies providing coverage to Doctor Jellen and that a justiciable controversy existed as to the coverage provided by

those policies but denied that those policies afforded any additional coverage. In due course, appellants filed a motion for summary judgment on the declaratory judgment petition. The trial court issued a letter opinion, stating its findings of fact and conclusions of law supporting the grant of the summary judgment motion, and entered the declaratory judgment order in conformity with that letter opinion, from which appellants have taken this appeal.

During discovery incident to the declaratory judgment petition, ICA produced five separate policies of insurance covering Doctor Jellen. In all of the policies Doctor Jellen was the named insured and the professional corporation, "A.V. Jellen, Inc." was made an "additional insured" by an endorsement included with each policy. The first policy stated the admitted limit of $500,000 "per occurrence", with an aggregate limit of $1,000,000 for all "occurrences" during "the term of the policy", January 1, 1985 through January 1, 1986. That policy provided coverage with respect to "professional services rendered or which should have been rendered ... during the term of this Policy ...".

The remaining four policies provided coverage for any "incident" occurring after January 1, 1986, "the retroactive date" set forth in the policy, for which a claim was made within the policy period. The policy period of each policy was for a calendar year, being 1986, 1987, 1988, and 1989, respectively.

Since appellants made their claim against Doctor Jellen in 1989, the "claims-made" policy at issue in the case *sub judice* is the policy issued for calendar year 1989. Its coverage limits were $1,000,000 per claim, with a $3,000,000 aggregate. The policy defined the "'per claim' limit of liability" as "the total amount of all claims filed by all claimants for any one incident". The policy states that "[o]nly those incidents which occur subsequent to the retroactive date [January 1, 1986] from which a claim arises and are first reported to us during the Policy Period [calendar year 1989] are covered." Further, the policy says that "the following will be considered one incident":

a.  all injury resulting from a series of acts or omissions in providing medical services to one person and

b.  all injury arising out of continuous or repeated exposure to substantially the same general conditions and

c.  all injury to a mother and her unborn child or children arising out of acts or omissions in providing medical services.

Appellants contend that because "incident" in not defined in the 1989 policy except by examples of what will be "considered" an incident, this Court should construe the term by its common meaning and declare each of Doctor Jellen's examinations in 1986 and 1987 to be a separate "incident". Appellees respond that the plain meaning of the 1989 policy terms and the common construction of like policies mandates that all of Doctor Jellen's examinations in 1986 and 1987 be treated as resulting in one injury, meaning one incident. Appellees further contend that certain "anti-stacking" language found in the professional corporation endorsement to the 1989 policy limits recovery under both the 1985 occurrences policy and the 1989 claims-made policy to the $1,000,000 per "incident" limit in the 1989 policy.

First, we address the issue of whether, under the 1989 claims-made policy, each examination and diagnosis made by Doctor Jellen in 1986 and 1987 is a separate "incident", invoking the $3,000,000 aggregate limit rather than the $1,000,000 "incident" limit. We conclude that the 1986 and 1987 examinations and diagnoses are one "incident" under the policy. The 1989 policy expressly provides that a claim includes the total amount of all claims filed for any one *incident*. It further expressly provides that "... all injury resulting from a series of acts or omissions in providing medical services to one person" will be *considered one incident*. These provisions are clear and unambiguous and will be given their plain, ordinary meaning. The 1989 policy clearly and unambiguously defines the four examinations and diagnoses of Mr. Auber by Doctor Jellen in 1986 and 1987 as one "incident" when the language employed in the policy is given its plain and ordinary meaning.

"Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970). Syl. pt. 1, *Russell v. State Automobile Mutual Insurance Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992).

■ " 'Language in an insurance policy should be given its plain, ordinary meaning.' Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986)." Syl. pt. 2, *Russell v. State Automobile Mutual Insurance Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992).

Our application of these rules of construction is consistent with our treatment of multiple acts of negligence leading to a single injury in other situations. In *Shamblin v. Nationwide Mutual Insurance Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985), we rejected the theory that two negligent acts covered by the same insurance policy and leading to a single injury constituted two "occurrences" under an "occurrences" type policy. And in *Shamblin* we said:

Any two antecedent negligent acts do not constitute two "occurrences." The term "occurrence" in a limitation of liability clause ... refers unmistakably to the resulting event for which the insured becomes liable and not to some antecedent cause(s) of the injury.

*Id.* at 343, 332 S.E.2d at 644.

In *Helmick v. Jones*, 192 W.Va. 317, 452 S.E.2d 408 (1994), we construed a policy setting liability limits "per accident" and said regarding the claim that for each act of negligence leading to the injury of a person:

[T]he term "accident" can only be interpreted to mean the resulting injury or damage sustained rather than the various factors which may have contributed to the causation of that ultimate resulting event.

*Id.* at 320, 452 S.E.2d at 411.

Next, we consider and reject appellees' contention that Doctor Jellen's 1985 ICA "occurrence" liability insurance policy is not applicable in determining the extent of ICA's liability. By its representation in the malpractice action that applicable policy limits were $500,000 and its admission of that coverage in its answer to the declaratory judgment petition, ICA clearly acknowledged that the 1985 "occurrences" policy covered Doctor Jellen's alleged negligence. ICA paid those policy limits when the parties agreed to the settlement terms and agreed that the Aubers might prosecute the declaratory judgment petition before us to determine if additional coverage applied.

In reviewing this question, we note that the 1985 examination and misdiagnosis is clearly one of the causes of the injury sustained by Mr. Auber. The parties have stipulated that the cancerous tumor found by Doctor Kalla was already formed at the time of that examination. Accordingly, the 1985 examination and misdiagnosis is itself a negligent act for which recovery could have been had.

■ The court below addressed the question of whether the five examinations and misdiagnoses constituted a "continuing tort". If it were concluded that the entire and only cause of action fully accrued in December, 1985, then one might further conclude that the 1989 claims-made policy was wholly inapplicable to the case before us. The court below concluded that the five separate examinations did not constitute a continuing tort. We agree.

In discussing the hallmarks of a continuing tort, we have said: "The Court conceives a 'continuing cause of action' as being a situation where events, which for all practical purposes are identical, occur repeatedly, at short intervals, in a consistent, connected, rhythmic manner." *DeRocchis v. Matlack, Inc.*, 194 W.Va. 417, 423 n. 4, 460 S.E.2d 663, 669 n. 4 (1995), discussing *Handley v. Town of Shinnston*, 169 W.Va. 617, 289 S.E.2d 201 (1982). In *Handley*, plaintiffs disregarded for a period in excess of the applicable statute of limitations the readily observable, steady and more or less continual leaking of water which, it was alleged, caused ever more serious injury to the plaintiffs. Treating the tort alleged as a continuing one, this Court held that the cause of action accrued

outside the period of limitations and could not be maintained. In contrast, in *DeRocchis* we considered the impact of a statute of limitations on a plaintiff's claim for damages involving repeated and successive exposure to totulene diisocyanate fumes. It was asserted that the several exposures resulted in progressive sensitivity to those fumes, causing injury to the plaintiff. We characterized the various exposures as resulting in a number of "discrete injuries" arising from exposure "on a number of different discrete occasions". We said: "In effect, there were a number of separate personal injuries, and a number of actions for personal injury, which occurred." *DeRocchis v. Matlack, Inc.*, 194 W.Va. at 422, 460 S.E.2d at 668. In that appeal, we allowed an action to proceed for any exposure that occurred within the applicable period of limitations even though other exposures had occurred outside the period of limitations.

The rationale of *DeRocchis* is applicable to the appeal before us. As was pointed out by the court below, there was not a continuing course of treatment with respect to each of the five examinations. Each examination produced a different misdiagnosis; each examination commenced a new line of treatment; each examination was an occasion of delay or further delay in the prompt and appropriate treatment of the rectal cancer. These discrete examinations, misdiagnoses and disparate treatments were not, in the words of *Handley*, identical, occurring repeatedly, at short intervals, in a consistent, connected, rhythmic manner. Just as in *DeRocchis*, where several discrete exposures each contributed to a worsening condition, each examination and misdiagnosis of Mr. Auber left Mr. Auber's tumor undetected, which, with each delay, grew and worsened. On each occasion, with each physical examination and misdiagnosis, a new course was set upon, being each time a discrete negli-gent act or omission and occasion of injury to Mr. Auber.[1]

Next, we examine whether the switch from "occurrence" to "claims-made" coverage limits the recovery permitted under the two policies. We find no policy language in the claims-made policies expressly dealing with the changeover from occurrences coverage to claims-made coverage. There is no language building a bridge between the two types of coverage. We also have been unable to locate any cases in this or other jurisdictions speaking to the issue created by the silence of both policies with respect to such a transition in coverage. We turn to basic definitions. "An 'occurrence' policy protects a policyholder from liability for any act done while the policy is in effect, whereas a 'claims-made' policy protects the holder only against claims made during the life of the policy." 7A J. Appleman, *Insurance Law and Practice* § 4503 at 90 (Berdal ed. 1979; Supp.1995). "Thus, an occurrence policy would cover a claim where the alleged malpractice occurred during the term of the policy even if the claim is not made or the malpractice not discovered until after the policy has lapsed...." *P.A. Osteopathic Medical Ass'n. v. Foster*, 134 Pa.Cmwlth. 368, 372–373, 579 A.2d 989, 991 (1990). We conclude that both the 1985 "occurrences" policy and the 1989 "claims-made" policy afford Doctor Jellen the coverage provided by the respective provisions of those policies. Absent express language to the contrary, the 1985 policy affords Doctor Jellen indemnity with respect to the alleged act of negligence occurring in 1985 which contributed to the Aubers' injury, and the 1989 policy affords Doctor Jellen indemnity with respect to the claim made in 1989 regarding the alleged acts of negligence occurring after the "retroactive date" of January 1, 1986. Accordingly, we hold that, in the absence of express language addressing the transition from occurrence to claims-made insurance coverage,

1. The contractual description of four of such examinations as one "incident" for purposes of insurance coverage under the 1989 claims-made insurance policy in no way determines whether the case before us involves one "continuing" tort or a series of discrete events, each giving rise to a cause of action. In specifying that "all injury resulting from a series of acts or omissions in providing medical services to one person ..." would be considered one "incident" for policy limit purposes, it is obvious that the language is inclusive of multiple injuries, for instance to different parts of the body, whether occurring at one time or in a "series" of connected or separate, discrete events.

both policies are available to respond to injuries that result from separate acts of negligence, one or more of which fairly fall within the terms of the coverage expressly afforded by each policy. Where the insurer and insured do not provide for the eventualities which might arise in the transition from one coverage to the other, this Court will not read into either policy any language that would reduce the coverage afforded by the policies by their express terms.

■ ICA further contends that the so-called "anti-stacking" language found in the professional corporation endorsements entitles ICA at least to a credit under the 1989 policy for the money paid under the 1985 policy. The "anti-stacking" language ICA relies upon is found *only in the endorsement and not in the policy to which the endorsement applies.* We note that the endorsement employs curious language, which, at a minimum, creates an ambiguity requiring that we construe the force and effect of the language employed. The "anti-stacking" provisions of the endorsements apply only to the *"COVERAGE EXTENDED UNDER THIS ENDORSEMENT"*. (Emphasis added.) The coverage extended under the endorsement is coverage for *the professional corporation named in the endorsement as* A.V. Jellen, Inc., a co-defendant with Doctor Jellen in this action, named in the pleadings as A.V. Jellen, M.D., P.C. The endorsements each provide that:

> Nothing herein contained shall be held to vary, alter, waive or extend the amount of coverage or any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as expressly set forth herein.[2]

■ As we have consistently held, ambiguous provisions in an insurance policy, especially those having the qualities of a contract of adhesion, are to be construed against the insurer and in favor of the insured. *Payne v. Weston and Allstate Insurance Co.,* 195 W.Va. 502, 466 S.E.2d 161 (1995); *Cannelton Industries, Inc. v. Aetna Casualty & Surety Company of America,* 194 W.Va. 186, 460 S.E.2d 1 (1994).[3] Applying this rule in con-

---

**2.** The 1985 endorsement providing coverage to the professional corporation contained the following additional language:

> COVERAGE IS HEREBY EXTENDED TO THE PROFESSIONAL CORPORATION NAMES BELOW TO INCLUDE ANY LIABILITY ARISING OUT OF THE RENDERING OF HEALTH CARE SERVICES BY SAID CORPORATION—
> A.V. JELLEN INC.
> COVERAGE EXTENDED UNDER THIS ENDORSEMENT IS SUBJECT TO A ONE–TIME LIMIT AND SHALL NOT SERVE TO HAVE A CUMULATIVE "STACKING" EFFECT WITH ENDORSEMENTS ISSUED TO ANY OTHER INSURANCE CORPORATION OF AMERICA POLICIES WHEREIN THE PROFESSIONAL ASSOCIATION, CORPORATION OR PARTNERSHIP NAMED HEREIN APPEARS AGAIN AS AN ADDITIONAL NAMED INSURED.
> Nothing herein contained shall be held to vary, alter, waive or extend the amount of coverage or any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as expressly set forth above.

The 1989 endorsement contained the following additional language:

> COVERAGE IS EXTENDED TO THE PROFESSIONAL ASSOCIATION, CORPORATION OR PARTNERSHIP NAMES BELOW TO INCLUDE ANY ASSOCIATION/CORPORATION OR PARTNERSHIP LIABILITY BUT ONLY IF ARISING OUT OF THE RENDERING OF HEALTH CARE SERVICES BY YOU.
> A.V. JELLEN INC.
> COVERAGE EXTENDED UNDER THIS ENDORSEMENT IS SUBJECT TO A ONE–TIME LIMIT AND WILL NOT SERVE TO HAVE A CUMULATIVE "STACKING" EFFECT WITH ENDORSEMENTS TO ANY OTHER POLICIES ISSUED BY US [ICA] WHERE THE PROFESSIONAL ASSOCIATION/CORPORATION/PARTNERSHIP NAMES ABOVE APPEARS AGAIN AS AN ADDITIONAL NAMED INSURED.
> Nothing herein contained shall be held to vary, alter, waive or extend the amount of coverage or any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as expressly set forth above.

**3.** Additional cases adopting this rule include: *State v. Janicki,* 188 W.Va. 100, 422 S.E.2d 822 (1992); *D'Annunzio v. Security–Connecticut Life Ins. Co.,* 186 W.Va. 39, 410 S.E.2d 275 (1991); *Horace Mann Insurance Company v. Leeber,* 180 W.Va. 375, 376 S.E.2d 581 (1988); *Burr v. Nationwide Mutual Insurance Co.,* 178 W.Va. 398, 359 S.E.2d 626 (1987); *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986); *Huggins v. Tri–County Bonding Co.,* 175 W.Va. 643, 337 S.E.2d 12 (1985); *Shamblin v. Nationwide Mutual Insurance Co.,* 175 W.Va. 337, 332 S.E.2d 639 (1985), *quoting* syl. pt. 2,

struing the endorsement, we hold that so-called anti-stacking language in a policy endorsement, limiting the coverage of successive policies with respect to an additional insured, imposes no such limitations with respect to a named insured in the same policy where the "anti-stacking" language used in the endorsement does not clearly state the intentions of the parties to apply the limitations to both the named insured and the additional insured. We conclude that Doctor Jellen, in his individual capacity, is entitled to the full limit of the indemnity provided by the policy without regard to ICA's effort to limit its liability in relation to Doctor Jellen's professional corporation. The endorsements before us, by their express terms, do not "vary, alter, waive or extend" the coverage provided Doctor Jellen, in his individual capacity. It is for ICA, not this Court, to deal with the disparate result that ICA's choice of language compels in this particular situation.

Since we have found no limitations on the coverage afforded by the two policies that would defeat their application to the settlement agreed upon by the parties, we find that both the 1985 and the 1986 policies are available to respond to the settlement agreement of the parties. In lieu of taking the case to judgment, the parties agreed in their settlement, in effect, that the damages sustained by reason of the Auber injury were at least $2,000,000 and that ICA might be required to pay up to that sum if its coverage extended to or beyond that limit. The total payment of $1,500,000 under the 1985 and 1989 policies does not exceed the total amount of damages which the parties have

agreed Mr. Auber sustained by reason of the negligence of Doctor Jellen.

■ Appellants also assign as error the circuit court's denial of prejudgment interest. They maintain they are entitled to prejudgment interest beginning May 28, 1992, the date of the release by which the parties agreed to liquidate tort damages in the settlement agreement. They base this claim on W.Va.Code § 56–6–31 (1981), which provides for an award of prejudgment interest on an award of special damages or liquidated damages.[4] Appellants contend that this Court interpreted the statute as mandatory in *Grove By and Through Grove v. Myers,* 181 W.Va. 342, 382 S.E.2d 536 (1989). There the Court stated, "prejudgment interest is recoverable, not as a matter of discretion, but as a matter of right, that is, as a matter of law, in personal injury and wrongful death actions, unless the statute or court rule in question provides otherwise." *Id.* at 346, 382 S.E.2d at 540.

Appellants have not considered the express provisions of their settlement agreement which fix the date upon which the right of further payment as a result of the declaratory judgment accrues. The parties provided in their settlement:

> At the conclusion of the declaratory judgment action and after the exhaustion of any and all appeal rights following, if it is determined that additional coverage is available, Insurance Corporation of America, will pay that coverage amount so determined, up to but not exceeding an additional One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00).

*Surbaugh v. Stonewall Casualty Co.,* 168 W.Va. 208, 283 S.E.2d 859 (1981); *Prete v. Merchants Property Insurance Company of Indiana,* 159 W.Va. 508, 223 S.E.2d 441 (1976); *Marson Coal Company, Inc. v. Insurance Company of the State of Pennsylvania,* 158 W.Va. 146, 210 S.E.2d 747 (1974); *Keffer v. Prudential Insurance Company of America,* 153 W.Va. 813, 172 S.E.2d 714 (1970).

4. West Virginia Code § 56–6–31 provides:
   Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or

decree or not: Provided, that if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law.

Where the parties to a settlement agreement have, by the terms of their agreement, fixed the time at which money is to be paid, any right to receive interest on that money runs from the date set by the parties for payment. In this case, the settlement agreement, not the cited statute imposing prejudgment interest, controls the date upon which interest begins to accrue, that is to say, at the exhaustion of the appeal rights which we are here deciding.

■ Finally, appellants contend that the trial court also erred in failing to assess appellees for appellants' attorney's fees. They claim that under the terms of the settlement agreement, Doctor Jellen assigned his right to bring a declaratory judgment action against ICA to determine the amount of coverage, thereby making the appellants first-party insureds. Further, they claim they substantially prevailed and are therefore entitled to attorney's fees.

The pertinent language of the settlement agreement states:

Lewis R. Auber and Jo–Ann Auber, his wife, will proceed to file a declaratory judgment action in the Circuit Court of Ohio County, West Virginia, the purpose of which is to determine if A.V. Jellen, M.D., and A.V. Jellen, M.D., P.C., possess any additional medical liability insurance coverage with Insurance Corporation of America applicable to this claim, aside from the Five Hundred Thousand and No/100 Dollars ($500,000.00) which has been paid....

*Note:* It is the position of Insurance Corporation of America that the total applicable medical liability insurance coverage available in this matter is Five Hundred Thousand and No/100 Dollars ($500,000.00) while Lewis R. Auber and Jo–Ann Auber, his wife, contend that additional coverage may exist.

Appellants contend this settlement provision clearly assigned to them Doctor Jellen's first-party rights against his insurance carrier and that in the declaratory judgment action, they were at all times acting for Doctor Jellen, albeit as assignees. They claim to be first-party claimants under the policy of insurance between Doctor Jellen and ICA. They assert that because ICA contended there was $500,000 of insurance available in this matter and the trial court found there was $1,500,000 of available insurance coverage, appellants substantially prevailed. Appellants cite *Aetna Casualty and Surety Company v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986), and *Hayseeds, Inc. v. State Farm Fire and Casualty,* 177 W.Va. 323, 352 S.E.2d 73 (1986), in support of their claim to attorney's fees.

Appellees argue Doctor Jellen did not assign his right in the policy to appellants, but rather merely authorized appellants, under the settlement agreement, to bring a declaratory judgment action against ICA to determine the limits of liability. Doctor Jellen claims he manifested no intention to assign his rights under the 1989 policy to appellants. We agree.

We find no words of assignment in the agreement authorizing appellants, rather than Doctor Jellen, to proceed with the declaratory judgment petition. We note also that the 1989 policy expressly states that Doctor Jellen cannot assign or transfer his rights under the policy. Appellants are not first-party insureds but rather are third parties who were merely authorized to bring in their own names a declaratory judgment action against another's insurer to determine the amount of available coverage. The cases appellants cite involve actions brought by a policyholder against his own insurer. That is not the situation in the case at bar. Here, we have third parties bringing an action against the insurance carrier of another. Those third parties have expressly waived any claim of bad faith against the carrier. In the circumstances before us, we decline to expand our prior holdings regarding attorney's fees to situations where third parties bring action against the insurance carrier of another. We hold that when an insured or insurer, acting under a settlement agreement, simply authorizes a third party to the settlement to bring a declaratory judgment action against the insurer to determine the insurer's limits of liability insurance coverage, the party bringing the action is not a first-party insured and is therefore not entitled to attorney's fees.

For the reasons stated, we affirm the judgment of the Circuit Court of Ohio County.

Affirmed.

RECHT, J., did not participate in the decision of this case.