# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Richard D. Lindsay and Pamela Lindsay
d/b/a Tabor Lindsay & Associates,
Defendants and Third-Party Plaintiffs Below,
Petitioners**

**FILED**

**April 25, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 11-1651** (Kanawha County 08-C-75)

**Attorneys Liability Protection Society, Inc., et al.,
Third-Party Defendants Below, Respondents**

## MEMORANDUM DECISION

The petitioners, Richard D. Lindsay and Pamela Tabor Lindsay d/b/a Tabor Lindsay & Associates, PLLC (collectively "Tabor Lindsay"), defendants/third-party plaintiffs below, appeal an order of the Circuit Court of Kanawha County granting summary judgment in favor of the respondent, Attorneys Liability Protection Society, Inc. ("ALPS"), third-party defendant below, thereby concluding that Tabor Lindsay was not entitled to coverage under claims-made-and-reported policies issued by ALPS for a lawsuit filed against Tabor Lindsay in 2008.[1]

Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we affirm the circuit court's grant of summary judgment in favor of ALPS. Stated succinctly, based upon the particular facts presented in this case, we conclude that the circuit court correctly determined that Tabor Lindsay failed to provide timely notice of the claim to ALPS, which failure precluded coverage under the claims-made-and-reported policies at issue. Furthermore, because this case presents no new or significant issues of law, we find this matter to be proper for disposition in a memorandum decision in accordance with Rule 21 of the West Virginia Revised Rules of Appellate Procedure.

The relevant facts are as follows. In March 2007, the law firm of Tabor Lindsay & Associates, PLLC, purchased from ALPS a lawyers professional liability

---

[1]We acknowledge and appreciate the participation in this appeal of Amicus Curiae, the West Virginia Mutual Insurance Company.

insurance policy. Importantly, this policy was a claims-made-and-reported policy[2] with a policy period from March 24, 2007, through March 24, 2008 ("the 2007 policy period" or "the 2007 policy").[3] The policy was renewed several consecutive times; each time for a new one-year policy period.

On January 10, 2008, during the 2007 policy period, a *pro se* complaint was filed against Tabor Lindsay by Ronnie Smith ("the Smith suit").[4] The lawsuit arose from a medical malpractice case Tabor Lindsay had litigated in the early 1990s in association with Rudolph DiTrapano.[5] The suit settled in 1995, and a trust was established to receive the

---

[2]Under a clams-made insurance policy, "coverage is provided based on when a claim is made as opposed to when the circumstances giving rise to the claim came into existence." 1 Allan D. Windt, *Insurance Claims & Disputes: Representation of Insurance Companies & Insureds* § 1:7, at 1-55 (5th ed. 2007) (footnote omitted). Explaining the difference between a claims-made policy and an occurrence policy, this Court has stated "'[a]n "occurrence" policy protects a policyholder from liability for any act done while the policy is in effect, whereas a "claims-made" policy protects the holder only against claims made during the life of the policy.' 7A J. Appleman, *Insurance Law and Practice* § 4503 at 90 (Berdal ed. 1979; Supp. 1995)." *Auber v. Jellen*, 196 W. Va. 168, 174, 469 S.E.2d 104, 110 (1996). A claims-made-*and-reported* policy, such as the policies at issue in the instant case, includes the additional requirement that the insurer be notified of the claim within the policy period. It has been explained that under a claims-made-*and-reported* policy, "a claim is not made until notice of the claim is given to the insurance company." 1 Allan D. Windt, *Insurance Claims & Disputes: Representation of Insurance Companies & Insureds* § 1:7, 1-56. In other words, "'in a claims-made-and-reported policy, notice is the event that actually triggers coverage.'" *Id.* at 1-58 n.4 (quoting *Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 956-57 (9th Cir. 2002)).

[3]The retroactive coverage date applicable to Richard Lindsay and Pamela Lindsay under the ALPS policies was March 24, 1993. The retroactive coverage date is the date from which a lawyer's conduct might be covered by the policy so long as a claim arising from such conduct is first made during the policy period.

[4]Mr. Smith sued in his capacity as administrator of his wife's estate, and on his own behalf.

[5]The plaintiffs, Mr. and Mrs. Smith, had retained Mr. DiTrapano to represent them in their malpractice action. Mr. DiTrapano then enlisted Tabor Lindsay to litigate the suit due to their expertise in handling medical malpractice cases.

2

proceeds of the settlement.[6]  The *pro se* complaint alleged that, in relation to the trust account, "Pamela Tabor Lindsay, had illegally and wrongfully caused a check to be issued in her name on August 9, 1996, in the amount of $290,000.00."  In response to the complaint, Tabor Lindsay hired counsel and filed an answer.  At this time, ALPS was not notified of the complaint.

Mr. Smith subsequently hired counsel and filed an "Amended Complaint" on May 27, 2008, after the expiration of the 2007 policy period, and during the policy that was in effect from March 24, 2008, to March 24, 2009 ("the 2008 policy period").  The amended complaint expanded the allegations of improper handling of the trust account funds made against Tabor Lindsay.  Specifically, the amended complaint alleged, *inter alia*, that Pamela Tabor Lindsay had wrongfully endorsed Mr. Smith's name on a check and failed to deposit certain settlement proceeds into the trust, and that Tabor Lindsay had failed to provide an accounting of allegedly missing funds.[7]  The amended complaint further alleged that these wrongful actions violated the fiduciary duty owed by Tabor Lindsay to the beneficiary of the trust account and to her husband.[8]  Tabor Lindsay again chose not to notify ALPS of the lawsuit.  In fact, no notice to ALPS regarding the Smith suit was provided during either the 2007 or 2008 policy periods.

Nearly two years later, under the ALPS claims-made-and-reported policy in effect from March 24, 2010, to March 24, 2011 ("the 2010 policy period" or "2010 policy"),

---

[6]Pamela Tabor Lindsay was one of three trust advisors to the bank.

[7]The Appendix Record submitted to this Court is silent as to whether a complaint has been filed with the Office of Disciplinary Counsel (ODC) in connection with the conduct alleged in the Smith suit.  Due to the nature of the allegations made against Tabor Lindsay, we find a referral of this matter to the Office of Disciplinary Counsel to be warranted.  "[W]hen this Court believes a case before it presents the appearance of conduct that does not comport with [the Rules of Professional Conduct ("RCP")], we will comply with Rule 8.3(a) of the RPC and Canon 3D(2) of the Code of Judicial Conduct, and refer the matter to the Office of Disciplinary Counsel (ODC) for its review."  *Gum v. Dudley*, 202 W. Va. 477, 491, 505 S.E.2d 391, 405 (1997).  Accordingly, we direct the Clerk of the Supreme Court of Appeals to transmit a certified copy of this Opinion to the ODC.  To be clear, by making this referral we express no opinion as to whether disciplinary proceedings ultimately should be initiated or how such proceedings should be resolved.  It is for ODC to determine whether, and/or how, to proceed after it has reviewed this matter.

[8]The trust account beneficiary was deceased at the time of the filing of the initial *pro se* complaint.

3

Richard Lindsay, for the first time, notified ALPS of the Smith suit by letter dated May 20, 2010. The letter explained that

> [a] lawsuit was filed against Pamela Lindsay, Richard Lindsay and Tabor Lindsay & Associates in 2008 from alleged negligent conduct in 1995.
>
> . . . .
>
> Because we looked upon this as a nuisance case – nothing was done for almost a year – we did not notify you, but I do not believe you are now prejudiced as we have during the time period employed local counsel . . . to represent us.

By letter dated May 25, 2010, ALPS informed Tabor Lindsay that it was disputing the request for insurance coverage. ALPS stated that its dispute was "based upon the failure to timely provide notice and based upon the allegations in the complaint which amount to a claim for conversion and demand for punitive damages." Thereafter, by letter dated June 23, 2010, ALPS notified Tabor Lindsay that it denied their request for a defense and indemnity. The correspondence stated in part:

> Unfortunately, coverage is not available for Mr. Smith's claims because, among other things, they were not "first made . . . and first reported" during the effective period of the Policy, as required under the insuring clause. Apart from this, the relief that Mr. Smith seeks, an accounting and repayment of amounts allegedly misappropriated by you, do not constitute damages within the meaning of the Policy. In addition, Mr. Smith's claims appear to fall within the scope of the Policy's exclusions for claims based upon improper handling of funds, billing disputes, and intentional/dishonest conduct. Because no coverage exists, ALPS will not provide you or your law firm, Tabor Lindsay & Associates, . . . with a defense to Mr. Smith's claims, and you will need to continue to employ your own counsel to protect your interests. . . .

Approximately four months later, on September 24, 2010, a second amended complaint was filed in the Smith suit. The second amended complaint re-alleged and adopted by reference the allegations in the amended complaint. In addition, the second amended complaint included an express allegation of negligence that stated: "[e]ach allegation therein setting forth actions, behaviors, omissions or violations of duty on the part of the defendants

were occasioned by their negligence." Tabor Lindsay notified ALPS of the second amended complaint on October 1, 2010. ALPS again denied Tabor Lindsay's request for a defense and indemnity, relying on several of the same grounds previously asserted for denying coverage. Moreover, ALPS noted that Tabor Lindsay had alleged no new facts or case law supporting coverage.

Tabor Lindsay then filed a third-party complaint that, in relevant part, sought declaratory judgment on the issue of coverage under its ALPS policies. ALPS filed a motion for summary judgment arguing that there was no coverage under the applicable policies insofar as Tabor Lindsay failed to provide notice of the claim to ALPS during the same policy period in which the claim was first made, the 2007 policy period. In addition, ALPS asserted that coverage also was unavailable due to the nature of the claims against Tabor Lindsay, *i.e.* claims seeking recovery of misappropriated funds. Tabor Lindsay filed a cross-motion for summary judgment. By order entered October 26, 2010, the circuit court granted ALPS' motion for summary judgment based on its conclusion that the Smith suit

> was not "first reported" within the policy period in which it was "first made," as required by the insuring clause. The undisputed evidence demonstrates that Mr. Smith first asserted his claim during the 2007 Policy period and that [Tabor Lindsay] did not report it until nearly *two years later*, during the 2010 Policy period.

We agree.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In reviewing the lower court's summary judgment order *de novo*, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). That is to say, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter*, 192 W. Va. 189, 451 S.E.2d 755.

To resolve the question of whether the circuit court correctly determined that there is no coverage for the Smith claim, we must examine the policy language. This Court has held that, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. pt 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled in part on other grounds by National Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or

5

interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co. of Am.*, 153 W. Va. 813, 172 S.E.2d 714 (1970). *See also* Syl., *Tynes v. Supreme Life Ins. Co. of Am.*, 158 W. Va. 188, 209 S.E.2d 567 (1974) ("Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed.").

The policies involved in the instant dispute are claims-made-and-reported policies.[9] The relevant language was the same in each policy, though we initially examine only the policy in effect during the 2007 policy period. The first page of the policy contained the following paragraph explaining the type of policy that had been purchased:

> This policy is a "Claims Made and Reported" policy. Therefore, the **Insured** must immediately report any **claim** to ALPS during the **policy period** or during any applicable **extended reporting period.** No coverage exists under this policy for a **claim** which is first made against the **Insured** or first reported to ALPS after the **policy period** or any applicable **extended reporting period.** If the **Insured** receives notice of a **claim**, or becomes aware of an act, error or omission or **personal injury** that could reasonably be expected to be the basis of a **claim,** the **Insured** must immediately deliver a written notice of the **claim** directly to ALPS. . . .

In addition, the policy placed an affirmative duty upon the insured to provide notice of any claim or potential claim of which the insured became aware. In a section titled "Insured's Obligations upon Notice of Claim or Potential Claim," the policy specified:

> When an **Insured** becomes aware of an act, error or omission or **personal injury** that could reasonably be expected to be the basis of a **claim**, but no **claim** arising therefrom has yet been made, the **Insured** shall give written notice to the **Company** as soon as practicable. Such notice shall include the fullest information obtainable concerning the potential **claim**.
>
> . . . .
>
> When a **claim** is made against an **Insured**, the **Insured** shall immediately forward to the **Company** every demand, notice, summons or other process received by him or his

---

[9]For a definition of this type of policy, see *supra* note 2.

6

representative. The **Company** shall have no obligation hereunder with respect to a **claim** unless and until so notified.

Furthermore, the first paragraph under the "Coverage" section of the policy reiterated that coverage was dependent upon a claim being "first made" against Tabor Lindsay and "first reported" to ALPS during the policy period:

> Subject to the **limit of liability**, exclusions, conditions and other terms of this policy, the **Company** agrees to pay on behalf of the **Insured** all sums (in excess of the **deductible** amount) that the **Insured** becomes legally obligated to pay as **damages**, arising from or in connection with A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND FIRST REPORTED TO THE **COMPANY** DURING THE **POLICY PERIOD** . . . .

The policy defines the term "claim" as "a demand for money or services, including but not limited to the service of suit or institution of arbitration proceedings against the **Insured**."

The foregoing language is not ambiguous as it relates to the facts of this case. The ALPS policy plainly required Tabor Lindsay to provide notice to ALPS of the Smith suit in 2007 when that claim was first made. Tabor Lindsay's failure to provide notice as required by the policy precludes coverage for that claim under the 2007 policy. Tabor Lindsay seeks to overcome the plain policy language by arguing, in essence, that because the allegations contained in the initial Smith suit would not have been covered under their policy, there was no need to report the same.[10] However, given the broad policy definition of the term "claim," and the fact that Tabor Lindsay was required by the policy to notify ALPS of "an act, error or omission . . . that could reasonably be expected to be the basis of a **claim**" as well as "every demand, notice, summons or other process received" in connection with a claim, Tabor Lindsay's argument is untenable.

Tabor Lindsay additionally seeks to obtain coverage under the 2010 policy period, arguing that the second amended complaint filed in the Smith suit should be treated as a new claim for purposes of notice to ALPS because the second amended complaint

---

[10]We note that this justification was not relied upon by Tabor Lindsay to explain to ALPS the reason for their untimely notice. Instead, Tabor Lindsay admitted that they chose not to provide notice because they considered the Smith suit to be a nuisance case.

added, for the first time, a negligence claim.  We reject this argument.[11]  As the circuit court observed, the second amended complaint was founded on the same set of operational facts as the earlier complaints.  The only change was the addition of a new theory based upon that same set of facts.  Under these circumstances, there simply was no new "claim" under the broad definition of that term set out in the policy.[12]  Furthermore, the 2010 policy precluded Tabor Lindsay from providing notice during a policy term subsequent to the 2007 policy period because Tabor Lindsay first knew about the Smith suit during the 2007 policy period.  Two provisions that appeared in each of the ALPS policies issued to Tabor Lindsay precluded coverage of the Smith suit based upon Tabor Lindsay's prior knowledge of the same.  Under the first provision, coverage for a claim would be available only if "at the **effective date** of this policy, no **Insured** knew or reasonably should have known or foreseen that the act, error, omission or **personal injury** might be the basis of a **claim**."  For each policy period following the 2007 policy period, Tabor Lindsay knew of the Smith suit; therefore, no coverage was available for the Smith suit under the plain terms of each of the policies issued after the 2007 policy.  Similarly, in a section of the policy titled "Insured's Obligations upon Notice of Claim or Potential Claim," the policy stated, in relevant part:

> In the event an **Insured** fails to give written notice to the **Company** of a **claim**, prior to the end of the **policy period** in which the **claim** is made, or in the event an **Insured** fails to give written notice to the **Company** of a potential **claim**, as described in Section 4.6.1,[13] prior to the end of the **policy period** in

---

[11]The circumstances of this case differ from one where timely notice has been given, coverage was denied, and the complaint was later amended.  Thus, our resolution of the instant matter, where notice was not timely given, provides no guidance for such a case.

[12]This case does not present a factual scenario where a complaint was amended to join an entirely separate claim against the defendant, such as where an original suit was filed to allege malpractice against a lawyer in relation to the drafting of a will, and the complaint subsequently amended to add a claim of malpractice involving the lawyer's representation of the same person in an unrelated civil lawsuit.  In the instant case, we need not decide whether such a scenario would render the new cause of action asserted in the amended complaint a "new claim" for purposes of providing notice to the insurer.

[13]Subsection 4.6.1 of the policy states:
> When an **Insured** becomes aware of an act, error or omission or **personal injury** that could reasonably be expected to be the basis of a **claim**, but no **claim** arising therefrom has yet been made, the Insured shall give written notice to the

(continued...)

which the **Insured** first becomes aware of the act, error, omission, or **personal injury**, then no coverage for any such **claim** shall be afforded to the **Insured** under any future policy issued by the **Company.**

(Footnote added). Thus, Tabor Lindsay's knowledge of the Smith suit during the 2007 policy period, combined with its failure to provide ALPS with notice of the same, precludes Tabor Lindsay from obtaining coverage for the claim under any subsequent policy, including the 2010 policy.[14]  In summary, because Tabor Lindsay ignored the plainly worded policy requirements and chose not to provide ALPS with notice of the Smith suit during the 2007 policy period when the claim was first made, coverage for that claim was forfeited by Tabor Lindsay.

Based upon the foregoing discussion, we affirm the October 26, 2010, order of the Circuit Court of Kanawha County that granted summary judgment in favor of ALPS.

Affirmed.

**ISSUED:** April 25, 2013

**CONCURRED IN BY:**
Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Judge Phillip M. Stowers, sitting by temporary assignment

**DISQUALIFIED:**
Justice Allen H. Loughry, II

---

[13](...continued)
**Company** as soon as practicable.  Such notice shall include the fullest information obtainable concerning the potential **claim**.

[14]We note that each annual renewal application completed by Tabor Lindsay following the 2007 policy period asked the following two questions: (1) "During the past five years, have any Professional Liability claim(s) been made against the applicant firm, any of its members or any former members while they were members of the firm?"; and (2) "Does any firm member have knowledge or information of any incident or occurrence which might give rise to a claim being made?"  On each application, Tabor Lindsay answered these questions in the negative.