488 S.E.2d 39

**OHIO FARMERS INSURANCE COMPANY, Appellant,**

v.

**VIDEO BANK, INC.; Home National Bank; and Craig Allen Smith, Executor of the Estate of Laura Gaye Duffield, Appellees.**

No. 23673.

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1997.

Decided May 30, 1997.

Catherine D. Munster, James A. Varner, McNeer, Highland, McMunn & Varner, L.C. Clarksburg, for Appellant.

William C. Garrett, Gassaway, Michael C. Farber, Sutton, for Appellee Craig Allen Smith, Executor of the Estate of Laura Gaye Duffield.

### PER CURIAM:

This is an appeal by Ohio Farmers Insurance Company from an order of the Circuit Court of Braxton County which directed a verdict for the appellee, Craig Allen Smith, Executor of the Estate of Laura Gaye Duffield, and which declared that the Estate of Laura Gaye Duffield was entitled to certain insurance proceeds. On appeal the appellant claims that the circuit court committed reversible error in directing the verdict and that the court erred in refusing to grant its motion for summary judgment. After reviewing the issues presented and the documents filed, this Court agrees with the appellant's claim relating to the directed verdict. The judgment of the Circuit Court of Braxton County is, therefore, reversed.

In 1989, Laura Gaye Duffield, whose executor is the appellee in this proceeding, owned the capital stock in a business called the "Video Bank" located in Sutton, West Virginia. This business was operated from the first floor of a building owned by Ms. Duffield. On the second floor of the building were apartments which were also owned by Ms. Duffield.

On or about October 1, 1989, Linda McCourt entered into a purchase agreement with Ms. Duffield whereby Ms. McCourt agreed to purchase the capital stock of the "Video Bank." At or about the same time Ms. McCourt executed a separate, collateral security agreement, to secure the loan of the purchase money for the capital stock. The capital stock of the "Video Bank" was the principal collateral under the agreement. The inventory of the "Video Bank" was not made a part of the collateral.

At the time of the sale of the "Video Bank," Ms. McCourt also leased the first floor premises of the Duffield real estate out of which the "Video Bank" was being operated.

Under the terms of the arrangements which Ms. McCourt and Ms. Duffield entered into, Ms. McCourt agreed to make periodic payments toward satisfaction of the purchase price of the stock and to make monthly rent payments for the leased premises. Ms. McCourt also undertook to obtain liability insurance for the premises and obtain property/casualty coverage in an amount at least equal to the outstanding balance of Ms. McCourt's remaining obligation.

Following the transaction between Ms. McCourt and Ms. Duffield, Ms. McCourt, on or about November 30, 1991, met with Loran Knicely, a real estate agent, to discuss the acquisition of insurance to cover her new "Video Bank" business. In the course of the conversation Ms. McCourt requested an insurance policy be issued to her to cover the business personal property in the amount of $45,000.00, the balance of the purchase price. She also requested liability coverage. At this time Ms. McCourt, apparently mistakenly, identified the Home National Bank as a loss payee under the policy. She did not request that Ms. Duffield be listed on the policy for any purpose. It does not appear that the Home National Bank had any inter-

est whatsoever in the transaction between Ms. McCourt and Ms. Duffield.

Pursuant to Ms. McCourt's application for insurance the appellant, Ohio Farmers Insurance Company, issued a policy, Business Owner's Policy Number BOP3 039 805, effective as of the date of the application. The policy which conformed to Ms. McCourt's request, did not list Ms. Duffield as a loss payee.

Approximately one month after the insurance policy was issued, Ms. McCourt, who apparently realized that the insurance policy issued to her failed to cover Ms. Duffield for liability, as required by their agreement, again contacted Loran Knicely, her insurance agent, and requested that her policy be endorsed to list Ms. Duffield as an additional named insured under the policy solely for the purposes of liability coverage. Ms. McCourt supplied Mr. Knicely with a copy of the lease agreement or portion thereof which obligated her to obtain such liability coverage. Ms. McCourt did not request property/casualty coverage, nor did she provide Loran Knicely with that portion of her purchase agreement which required her to obtain property/casualty coverage. There is no evidence that Mr. Knicely was aware of Ms. McCourt's obligation to maintain property/casualty coverage under the agreement.

After receiving the request for an endorsement the appellant, Ohio Farmers Insurance Company, duly issued the requested endorsement and added Ms. Duffield as an additional insured solely for the purpose of the liability coverage. The endorsement was made exactly as requested by Ms. McCourt. Upon making the endorsement the Ohio Farmers Insurance Company sent copies of the amended policy to Ms. McCourt, Home National Bank, and Ms. Duffield.

Sometime after the endorsement was added to the insurance policy, Ms. Duffield died, and Craig Allen Smith inherited the property in which the "Video Bank" was located. He was also appointed executor of her estate.

On or about March 21, 1992, a water leak occurred in a second floor apartment of the Duffield building. This leak resulted in water damage to the "Video Bank" inventory.

A subsequent investigation resulted in an admission by Ms. McCourt that after the leak she had willfully and intentionally increased the damage to a substantial portion of the inventory of the "Video Bank" by pouring water into and submersing parts of the inventory in water.

As a consequence of the intentional damage to the inventory, Ms. McCourt was precluded from recovering on the policy issued by Ohio Farmers Insurance Company. Craig Allen Smith, however, asserted that the Estate of Laura Gaye Duffield, as a lienholder, had a claim to the insurance proceeds.

To resolve the question of whether Mr. Smith, as executor of the Duffield estate was entitled to the proceeds, the appellant, Ohio Farmers Insurance Company, instituted the present declaratory judgment action in the Circuit Court of Ohio County.

In response to the filing of the action, Craig Allen Smith, as the Executor of the Estate of Laura Gaye Duffield, filed counterclaims in which he asserted that he was entitled to the insurance proceeds in issue. Among other things, he asserted that there had been a negligent failure to list Ms. Duffield as the named insured for all purposes, that the appellant, Ohio Farmers Insurance Company, had made a bad faith refusal to settle the claim, and that Ohio Farmers Insurance Company had been guilty of defamation. Ohio Farmers Insurance Company denied all these claims. Ohio Farmers Insurance Company also moved for summary judgment.

The court denied the motion for summary judgment, and the case ultimately went to trial. After three days of trial, at the close of the evidence, the trial court directed verdicts in the case. The court found that Loran Knicely, the insurance agent, was instructed by Ms. McCourt to list "Video Bank, Inc." as the insured on her insurance policy, to list Home National Bank as the additional loss payee, and to list Laura Gaye Duffield as an insured solely for the purposes of liability coverage. The court also found that Loran Knicely accurately communicated Ms. McCourt's instructions to the appellant, Ohio Farmers Insurance Company, and that the

**42**

appellant accurately listed the payees as requested.

The circuit court also found that there was no evidence that Ohio Farmers Insurance Company had acted in bad faith in refusing to settle the matter or in bringing declaratory judgment inasmuch as there appeared to be two if not three competing claimants to the insurance proceeds. The court then went on to hold:

> In agreeing to the terms of the Lease Agreement, the intent of both McCourt and Duffield was for the former to obtain liability insurance to protect the latter from such risks, which was accomplished when McCourt sought and obtained the endorsement to the subject policy.

> In agreeing to the terms of the Agreement, the intent of both McCourt and Duffield was for the former to obtain property/casualty insurance to protect the latter's interest in the inventory which was the subject of the Agreement, which was not accomplished when McCourt sought and obtained the subject policy nor when she subsequently obtained the endorsement thereto.

> The Home National Bank did not have an insurable interest in the proceeds of the policy inasmuch as the inventory of the "Video Bank" had not been pledged as collateral for the loan McCourt used to obtain the down payment to purchase the corporation.

> Subsequent to the issuance of the policy—but before the amendment adding Duffield as an additional insured solely for the purpose of liability coverage—Smith contacted Knicely inquiring about the policy's coverage of his decedent, Duffield. Smith was informed by Knicely that it was appropriate for McCourt to request any policy amendments inasmuch as it was McCourt who had procured the policy for her corporation.

> McCourt, who was not an agent of Ohio Farmers, thereafter sought only the liability coverage for Duffield but not the property/casualty coverage, nor did McCourt have Duffield added as a loss payee in lieu of the Home National Bank, which did not

have an insurable interest in the inventory of "Video Bank."

> Knicely was unaware from any source of the contractual obligations of McCourt to Duffield other than the lease agreement's requirement that liability coverage be obtained for the benefit of Duffield.

\* \* \* \* \* \*

> The matter was tried to the jury upon the issue of whether defendant Smith was entitled to coverage (1) Duffield was not named as a loss payee, and (2) the failure to list her as an additional insured for all purposes resulted in a lack of entitlement for Duffield to receive policy proceeds, a position raised in several plaintiff motions for summary judgment, but which were not ruled upon.

After making all these findings the trial court proceeded to rule:

> Duffield should have been entitled to compensation for the loss sustained pursuant to the several agreements between her and McCourt, but to which Ohio Farmers is not a party.

> Duffield should not be penalized by virtue of the fact that there was a failure by McCourt to list Duffield as a loss payee, inasmuch as Duffield had an insurable interest in the inventory whereas the Home National Bank did not.

> Since Ohio Farmers has been compensated to afford such protection, it should not be permitted to avoid its obligation as a consequence of McCourt's apparent mistaken listing of Home National Bank as the loss payee. Since Home National Bank never had an insurable interest, McCourt must have made a unilateral mistake of which Knicely was unaware in instructing Knicely to list Home National Bank as the loss payee.

> Furthermore, McCourt made a second unilateral mistake of which Knicely was unaware when she returned to Knicely and requested that Duffield be added to the policy as an additional insured solely for the purposes of liability coverage.

> Therefore, the Court concludes that the Home National Bank should be removed as the loss payee and replaced by Laura

Gaye Duffield and her estate as loss payee, and that Smith as the Executor of the Estate of Duffield is entitled to the amount of his claim, to wit, $20,010.00.

As previously indicated in the present appeal, Ohio Farmers Insurance Company takes the position that the circuit court committed reversible error in directing a verdict against it. It claims that the court should have applied the clear and unambiguous terms of the insurance contract and that the court erred in rewriting the contract to add Ms. Duffield or her estate an additional loss payee. It also claims that the circuit court committed reversible error in failing to grant its motion for summary judgment based on the estate's complete lack of insurable interest in the policy proceeds.

■ In *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973), we discussed where a directed verdict was appropriate in a civil case. In Syllabus Point 5 the Court stated:

Upon a motion for directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed.

■ It appears that to direct a verdict for Craig Allen Smith, Executor of the Estate of Laura Gaye Duffield, the trial court in the present case, in effect, took action which resulted in the rewriting or reformation of the policy issued by Ohio Farmers Insurance Company. Such a rewriting or reformation was required in order for the trial court to direct or for the jury to return a verdict for the Estate of Ms. Duffield, inasmuch as Ms. Duffield was clearly not named a loss payee on the policy issued by Ohio Farmers Insurance Company, and our law is clear and well settled that a lienholder may not collect on an insurance policy *unless* the lienholder is specifically named as a loss payee, or *unless* the lienholder has received an assignment of the policy. On this point Syllabus Point 4 of *Fuller v. Stonewall Casualty Company of West Virginia,* 172 W.Va. 193, 304 S.E.2d 347 (1983), states, in part:

A loss payee under a fire insurance policy is ordinarily looked upon to have a separate contractual right with the insurer. By reason of this contractual right, a lienholder who is named as loss payee on an insurance policy is entitled to the insurance proceeds to the extent of the amount of his debt which is independent of the claim of other lien or judgment creditors. A mortgagee or lienholder has no claim to the benefit of a fire insurance policy unless he has been named loss payee or the policy has otherwise been assigned to him....

■ In evaluating whether a rewriting or reformation of the policy is appropriate and correct in the present case, the Court notes that, an insurance policy is subject to reformation just as is any other contract. Further, the circumstances under which reformation is appropriate are discussed in some detail in *American Employers Insurance Company v. St. Paul Fire and Marine Insurance Company Limited,* 594 F.2d 973 (4th Cir.1979), a federal case growing out of an accident which occurred in West Virginia. That case states:

A leading commentary, 13A Appleman, Insurance Law and Practice § 7607 (1976), explains the law as follows:

The general rules applying to the reformation of other written contracts apply to contracts of insurance, the courts will reform an insurance policy, like any other instrument, to effectuate the intention of the parties, and make it set forth correctly the contract upon which the minds of the parties met, and equity jurisdiction applies to insurance policies as well as to other agreements. And, like other contracts, fraud, mutual mistake, or accident may give good ground for reformation.

For reformation to be allowed on the basis of mutual mistake, the same commentary goes on to say, § 7608 at 309:

[T]he law requires that the alleged mistake must have occurred through the reduction of the understanding and agreed intent of the parties to writing, so that the written instrument does not represent the real agreement.

The Restatement of Contracts, § 504 (1932), sets forth the critical test of "identical intention":

[w]here both parties have an identical intention as to the terms to be embodied in a proposed written ... contract ... and a writing executed by them is materially at variance with that intention, either party can get a decree that the writing shall be reformed so that it shall express the intention of the parties, if innocent third persons will not be unfairly affected thereby.

There are thus three basic prerequisites for reformation of an insurance policy on the ground of mutual mistake: a bargain between the parties; a written instrument supposedly containing the terms of that bargain; and a material variance between the mutual intention of the parties and the written instrument. See Covington, Reformation of Contracts of Personal Insurance, 1964 Ill.L.F. 543, 459. These elements must be proved by "very strong, clear and convincing evidence." *State Farm Mutual Automobile Ins. Co. v. Hanson,* 7 Ill.App.3d 678, 288 N.E.2d 523, 526 (4th Dist.1972).

594 F.2d at 977.

█ It is clear from the foregoing that reformation is appropriate only where there is a mutual mistake, rather than in a unilateral mistake situation such as the one involved in the case presently under consideration. Also, reformation is appropriate only if the written agreement or insurance policy does not conform to the clear unwritten agreement between the parties.

It unmistakenly appears in the present case that the unwritten agreement between Ms. McCourt and Ohio Farmers Insurance Company never contemplated that Ms. Duffield, or her estate, be a loss payee. The record is clear that Ms. McCourt never requested that Ms. Duffield be named as a loss payee, and the record is also clear that the written policy actually issued by Ohio Farmers Insurance Company conformed to Ms. McCourt's request and conformed to the agreement between Ms. McCourt and Loran Knicely who was acting as agent for Ohio Farmers Insurance Company.

It is obvious to this Court that the fundamental legal prerequisites for reformation were never established in the present case

and the trial court erred in reforming the insurance policy issued by Ohio Farmers Insurance Company. Further, without such reformation Ms. Duffield, (or her estate), who was not named loss payee on the policy as written or changed by endorsement, is not legally entitled to the insurance proceeds under the rule set forth in Syllabus Point 4 of *Fuller v. Stonewall Casualty Company of West Virginia, supra.*

In view of all the foregoing, the Court believes that the trial court erred in directing a verdict against Ohio Farmers Insurance Company in this case.

█ The Court notes that Ohio Farmers Insurance Company also argues that the trial court should have granted its motion for summary judgment. Our rule relating to summary judgment is that:

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty and Surety Company v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

Regarding the assertion of Ohio Farmers Insurance Company that the trial court should have granted its motion for summary judgment, this Court disagrees since this Court believes the trial court properly ruled that some inquiry concerning the facts of this case arguably was appropriate and was needed at the time the motion was denied.

In light of the fact that the trial court erred in granting a directed verdict against Ohio Farmers Insurance Company, this Court believes that the judgment of the Circuit Court of Braxton County must be reversed. Further, since in this Court's view, the evidence adduced was legally insufficient to sustain a verdict for Craig Allen Smith, as executor of the Estate of Laura Gaye Duffield, this Court believes that it is appropriate that this case be remanded with directions that the circuit court render judgment for Ohio Farmers Insurance Company on the claims of Mr. Smith.

For the reasons stated the judgment of the Circuit Court of Braxton County is reversed, and this case is remanded with directions that the circuit court enter judgment for Ohio Farmers Insurance Company on the claims of Craig Allen Smith, as executor of the Estate of Laura Gaye Duffield.

Reversed and remanded with directions.