IN THE SUPREME COURT OF WEST VIRGINIA

September 2014 Term

FILED

October 15, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0692

WEST VIRGINIA MUTUAL INSURANCE COMPANY,
Defendant Below, Petitioner

v.

BETTY J. ADKINS, RAYETTA D. BAUMGARDNER, DIANA L. BOERKE,
LATHA A. BOLEN, CHARLOTTE L. DEAL, CONSTANCE L. DEVORE,
TERESSA D. HAGER, LORENNA D. HANKINS, TAMMY H. CLARK,
PAMELA K. HATFIELD, MARCIE J. HOLTON, LINDA L. JONES,
PATTY S. LEWIS, TERESA LOVINS, MARTHA J. MARTIN, LOUELLA PERRY,
SHERRY L. PERRY, JANICE PETIT, KIMBERLY A. ROE, JANICE ROUSH,
REBECCA SMITH, BEULAH STEPHENS, AND DEBRA L. WISE,
Plaintiffs Below, Respondents

Appeal from the Circuit Court of Kanawha County
Honorable Jennifer F. Bailey, Judge
Civil Action No. 10-C-2282

REVERSED AND REMANDED

Submitted: September 9, 2014
Filed: October 15, 2014

D.C. Offutt, Jr., Esq.                    Paul T. Farrell, Jr., Esq.
Matthew Mains, Esq.                       Greene, Ketchum, Farrell, Bailey,
Offutt Nord Burchett, PLLC                & Tweel
Huntington, West Virginia                 Huntington, West Virginia
Attorneys for Petitioner                  J. Robert Rogers, Esq.
                                          Charleston, West Virginia
                                          Attorneys for Respondents

Corey L. Palumbo, Esq.
James E. Scott, Esq.
Bowles Rice LLP
Charleston, West Virginia
Attorneys for Amicus Curiae
Brickstreet Mutual Insurance
Company

Jill Cranston Rice, Esq.
Tyler Williams, Esq.
Dinsmore & Shohl, LLP
Charleston, West Virginia
Attorneys for Amicus Curiae
West Virginia Insurance
Federation

JUSTICE LOUGHRY delivered the Opinion of the Court.
CHIEF JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.
JUSTICE KETHCUM, deeming himself disqualified, did not participate in the decision of this case.
JUDGE MARKS, sitting by special assignment.

**SYLLABUS BY THE COURT**

1.  "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

2.  "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement [sic], shall be reviewed *de novo* on appeal." Syl. Pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999).

3.  "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970).

LOUGHRY, Justice:

The petitioner, West Virginia Mutual Insurance Company, Inc. ("WVMIC"), appeals the circuit court's May 30, 2013, order granting summary judgment in favor of the respondents[1] in this declaratory judgment action. Under the terms of a global settlement agreement, WVMIC has already tendered $3 million to the respondents under an extended reporting endorsement insuring the respondents' surgeon against whom the respondents had asserted medical malpractice claims.[2] The global settlement agreement further provided that the respondents and WVMIC would seek and abide by a judicial determination as to whether additional insurance limits are available for the respondents' vicarious liability claims against their surgeon's former employer, United Health Professional, Inc. ("UHP"). UHP is a medical corporation insured under a claims-made medical malpractice insurance policy issued by WVMIC for calendar year 2010 ("2010 Policy").

The circuit court granted summary judgment in favor of the respondents finding there was an additional $6 million in policy limits available for their claims asserted

[1]The respondents (plaintiffs below) are Betty J. Adkins, Rayetta D. Baumgardner, Diana L. Boerke, Latha A. Bolen, Charlotte L. Deal, Constance L. Devore, Teressa D. Hager, Lorenna D. Hankins, Tammy H. Clark, Pamela K. Hatfield, Marcie J. Holton, Linda L. Jones, Patty S. Lewis, Teresa Lovins, Martha J. Martin, Louella Perry, Sherry L. Perry, Janice Pettit, Kimberly A. Roe, Janice Roush, Rebecca Smith, Beulah Stephens, and Debra L. Wise.

[2]The surgeon's extended reporting endorsement is more fully discussed *infra.*

1

against UHP under the 2010 Policy, which amount was in addition to the $3 million previously tendered for their claims asserted against their surgeon under the global settlement agreement. For the reasons set forth below, we reverse the circuit court's ruling and find, instead, that UHP has a total of $3 million in separate policy limits under the 2010 Policy for the respondents' claims asserted against it. This $3 million will be in addition to the $3 million that WVMIC has already tendered under the global settlement agreement for the claims asserted against the surgeon.[3]

**Factual and Procedural Background**

WVMIC is a professional medical liability insurer that insures physicians, medical practices, and others in West Virginia. UHP,[4] a West Virginia corporation engaged in providing professional medical services, is insured by WVMIC.[5] The medical malpractice claims underlying the current dispute were asserted by the respondents; they arise out of

---

[3]To summarize, under the circuit court's ruling, the respondents would have ultimately received a total of $9 million in insurance proceeds: the $3 million already paid on behalf of the surgeon and an additional $6 million to be paid on behalf of UHP under the 2010 Policy. Conversely, under our ruling herein, the respondents will ultimately receive a total of $6 million: the $3 million already paid on behalf of the surgeon and an additional $3 million to be paid on behalf of UHP under the 2010 Policy.

[4]UHP was dismissed from the action below and does not participate in this appeal.

[5]The policy was first issued by WVMIC in 2005, and that policy has been renewed annually with various modifications and amendatory endorsements. The policy periods began on January 1 of each year, and we refer to the other policy periods by the year the policy first became effective.

2

surgeries performed on them by Mitchell E. Nutt, M.D. The surgeries, which involved the implantation of a transvaginal mesh as treatment for pelvic organ prolapse, were performed in years 2006 and 2007, while Dr. Nutt was an employee of UHP. The respondents ("the Mesh Plaintiffs") either filed suit or otherwise asserted medical malpractice claims against Dr. Nutt in 2008, 2009, and 2010. In 2010, they asserted vicarious liability claims against Dr. Nutt's employer, UHP.

In August 2011, the parties reached a global settlement agreement pursuant to which WVMIC tendered Dr. Nutt's $3 million in aggregate limits under his extended reporting endorsement, which is also referred to as "tail coverage."[6] Dr. Nutt's tail coverage was acquired upon his departure from employment with UHP on March 14, 2008, at which time he was terminated from the 2008 claims-made policy. His termination was accomplished through an amendatory endorsement to the 2008 policy, which states that "[i]n consideration of a return premium of $82,085.00, it is agreed and understood that the Policy Declarations has been amended to cancel Mitchell E. Nutt, M.D. effective 3/14/2008." Because the 2008 policy provides insureds with the right to purchase an extended reporting

---

[6]West Virginia Code §33-20D-2(a) (2011) provides, as follows:

> "Tail insurance" means insurance which covers a professional insured once a claims made malpractice insurance policy is cancelled, not renewed or terminated and covers claims made after such cancellation or termination for acts occurring during the period the prior malpractice insurance was in effect.

3

period if the policy were canceled, upon his cancellation from the 2008 policy, UHP purchased the extended reporting endorsement for Dr. Nutt, which was issued by WVMIC. The tail coverage provides Dr. Nutt with separate limits of coverage of $1 million per covered medical incident with a $3 million annual aggregate.

Having tendered the annual aggregate limit of Dr. Nutt's tail coverage under the global settlement, the parties agreed to resolve their remaining dispute—whether additional coverage is available under the 2010 Policy for the claims asserted against UHP—through the institution of a declaratory judgment action.[7] In accordance with the terms of the settlement agreement, WVMIC "agree[d] to pay on behalf of [UHP] the total amount of insurance coverage the Court decides [UHP] has over and above the Three Million Dollars ($3,000,000.00) paid on behalf of Mitchell E. Nutt, M.D. . . ."

The Mesh Plaintiffs instituted the underlying declaratory judgment action on December 20, 2010. Following discovery, they filed a motion for summary judgment seeking a declaration that there is additional insurance coverage in the amount of $6 million for their claims against UHP. Opposing the motion and asserting a cross-motion for summary judgment, WVMIC sought a ruling that there are no separate insurance limits available to UHP under the 2010 Policy. In the alternative, WVMIC argued that if the circuit

---

[7]*See* W.Va. Code §§ 55-13-1 to -16 (2008) [Uniform Declaratory Judgments Act].

4

court were to find that separate insurance limits were available to UHP for the subject claims under the 2010 Policy, then there was a mutual mistake that warranted an equitable reformation of the 2010 Policy. In this regard, WVMIC argued that although the Policy Declarations reflect that UHP has separate limits of coverage with a retroactive date of January 1, 2002,[8] UHP actually intended the retroactive date to be January 1, 2008, for its separate limits and the retroactive date of January 1, 2002, to be for its shared limits, which would apply to the Mesh Plaintiffs' claims. Because WVMIC paid the $3 million aggregate limit under Dr. Nutt's tail coverage, WVMIC maintained that UHP shared in that limit and there was no further insurance coverage available under the 2010 Policy for these claims.

On May 30, 2013, the circuit court entered its Order Granting Plaintiffs' Motion for Summary Judgment. Relying on the parties' stipulation that the 2010 Policy provisions are clear and unambiguous and upon prior precedent of this Court, the circuit court concluded the policy terms were not subject to judicial construction, interpretation, or reformation, and that full effect would be given to the plain meaning intended.

---

[8]West Virginia Code § 29-12B-3(e) (2013) defines "retroactive date" as "the date designated in the policy declarations, before which coverage is not applicable." The 2010 Policy defines "retroactive date" as "that date specified as such in the **policy declarations**." The Policy Declarations reflect that the retroactive date for UHP is "01/01/2002."

In applying the plain meaning of the 2010 Policy terms, the circuit court determined that the applicable retroactive date for coverage purposes for UHP was set forth in the Policy Declarations as January 1, 2002.[9] The circuit court further found that the Mesh Plaintffs' claims against UHP, which resulted from medical incidents that occurred after the retroactive date of January 1, 2002, and which were first reported during the 2010 policy period, were covered under the 2010 Policy. Citing a change in the language of the Limit of Insurance section of the 2010 Policy, as more fully discussed herein, the circuit court concluded that UHP's insurance limit is calculated based on the policy year in which the medical incidents occurred. The circuit court reasoned that because the Mesh Plaintiffs' medical incidents occurred during two separate policy periods (2006 and 2007), there was a total of $6 million in coverage available for their claims asserted against UHP.

The circuit court also addressed WVMIC's argument that UHP did not intend to have separate limits of coverage for medical incidents that occurred prior to 2008. In this regard, the circuit court noted that UHP first requested the separate limits of coverage in January 2008. To support its finding, the circuit court cited an amendatory endorsement in the 2008 policy, which provides, in part, as follows: "In consideration of an additional premium of $42,847.00, it is agreed and understood that the **Policy Declarations** has been

---

[9]This retroactive date was specifically requested by UHP in its 2010 renewal application, as more fulling discussed, *infra.* The application was attached as an exhibit to WVMIC's cross-motion for summary judgment.

amended to change the corporate limits from Shared to Separate, effective 01/01/2008, at the request of the **Insured**." As further support for its conclusion, the circuit court observed that this endorsement did not amend the retroactive date of January 1, 2002, as set forth in the Policy Declarations for the 2008 policy,[10] and that each successive policy period expressly referenced UHP as having separate limits of insurance of $1 million per medical incident with a $3 million annual aggregate and a retroactive date of January 1, 2002.

In addressing WVMIC's reformation argument, the circuit court found that "[i]t is only when the document has been found to be ambiguous that the determination of intent through extrinsic evidence become[s] a question of fact." *Blake v. State Farm Mut. Ins. Co.*, 224 W.Va. 317, 323, 685 S.E.2d 895, 901 (2009) (quoting *Payne v. Weston*, 195 W.Va. 502, 507, 466 S.E.2d 161, 166 (1995)). Based on the parties' stipulation that the provisions of the 2010 Policy are clear and unambiguous, the lower court concluded that WVMIC could not seek reformation of the policy through the introduction of extrinsic evidence of intent. Disagreeing with the rulings of the circuit court in its summary judgment order, WVMIC appeals.

---

[10]This endorsement sets forth an "EFFECTIVE DATE" of "01/01/08" and a "DATE ENDORSEMENT ISSUED" of "01/30/2008[.]" There is no "retroactive date" on the face of this endorsement.

7

## II. Standard of Review

Our review of the circuit court's summary judgment ruling in this declaratory judgment action is plenary. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). Similarly, where "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement [sic], shall be reviewed *de novo* on appeal." Syl. Pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999). Against this standard, the parties' arguments will be considered.

## III. Discussion

### A. Nature of the 2010 Policy

The 2010 Policy is a claims-made medical malpractice policy, which has been legislatively defined as "a policy which covers claims which are reported during the policy period, meet the provisions specified by the policy, and are for an incident which occurred during the policy period, or occurred prior to the policy period, as is specified by the policy." W.Va. Code § 33-20D-2(b) (2011). Malpractice coverage can also be provided through an "occurrence" policy. In distinguishing these two types of polices, we have recognized that an "occurrence" policy "protects [] [the] policyholder from liability for any act done while the policy is in effect, whereas a 'claims-made' policy protects the holder only against claims

8

made during the life of the policy." *Auber v. Jellen*, 196 W.Va. 168, 174, 469 S.E.2d 104, 110 (1996). Bearing these distinctions in mind, we turn to the claims-made policy at issue—the 2010 Policy.

## B. 2010 Policy Limits

The issue before us is whether separate policy insurance limits are available under the 2010 Policy for the Mesh Plaintiffs' claims asserted against UHP. Specifically, the coverage at issue would be in addition to $3 million in proceeds that have previously been paid under Dr. Nutt's tail coverage for the Mesh Plaintiffs' claims asserted against him, as part of the parties' global settlement. As we undertake this task, we are mindful, as was the circuit court, of our long-standing precedent that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co. of Am.*, 153 W.Va. 813, 172 S.E.2d 714 (1970).[11]

---

[11]*See also*, Syl. Pt. 2, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985) ("Where provisions in an insurance policy are plain and unambiguous . . . the provisions will be applied and not construed."); Syl. Pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), overruled, in part, on other grounds by *Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W.Va. 734, 356 S.E.2d 488 (1987) ("Language in an insurance policy should be given its plain, ordinary meaning.").

WVMIC asks this Court to reverse the circuit court's ruling that coverage existed under multiple policy periods. In reaching its conclusion, the circuit court relied upon the Limit of Insurance section of the 2005, 2006, and 2007 policies, which provides, in part, as follows:

> The Limit of Insurance specified in the **Policy Declarations** for each **insured** as the "annual aggregate" is the total limit of our liability for **damages** for that **insured** resulting from any and all **medical incident(s)** which are first reported during the **policy period**. (Underscoring added).

The circuit court further observed that the underscored language was removed from the Limit of Insurance section of the 2008, 2009, and 2010 policies, which provide:

> The limit of insurance specified in the **policy declarations** for each **insured** as the "annual aggregate" is the total limit of **the Company's** liability for **damages** for that **insured** resulting from all covered **medical incident(s)** during the **policy period**. (Underscoring added).

The circuit court concluded that the language "covered medical incident(s) during the policy period" requires application of the aggregate limits of insurance for the "policy period" when the "incidents" occurred–2006 and 2007–giving UHP a total of $6 million in policy limits for the Mesh Plaintiffs' claims. We disagree with this conclusion.

The circuit court has erroneously attributed an intent to this change in policy language that is inconsistent with what constitutes a "covered" medical incident under the policy. Contrary to the circuit court's reasoning, the words "policy period" are not a

10

reference to the prior 2006 and 2007 claims-made policies, which had expired by their own terms;[12] rather, "policy period" is expressly defined in the 2010 Policy as "the period specified as such in the **policy declarations**." The Policy Declarations clearly state that the "**Policy Period**" is "from 01-01-2010 12:01 AM Standard Time to 01-01-2011 12:01 AM Standard Time." Further, the General Conditions section of the 2010 Policy states in subsection E. that WVMIC is "providing insurance under this **policy** . . . beginning at 12:01 A.M. and ending at 12:01 A.M. during the **policy period** stated in the **policy declarations**[][.]" In short, there is nothing in the 2010 Policy that would support the circuit court's conclusion that "policy period" refers to anything other than the 2010 policy period.

Under West Virginia Code § 33-6-30(a) (2011), "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement or application attached to and made a part of the policy[.]" Here, the declarations page of the 2010 Policy states, as follows:

> THE MEDICAL PROFESSIONAL LIABILITY COVERAGE CONTAINED IN THIS POLICY IS "CLAIMS MADE" COVERAGE. This policy applies only to claim(s) that arise out of a medical incident which occurs on or after the retroactive date stated in the policy declarations and schedule of insureds, and that are first made against an insured and reported to the Company [WVMIC] by the insured during the policy period,

---

[12]The claims-made policies expired at 12:01 a.m. on January 1 of each calendar year.

11

unless coverage is excluded by a provision in the coverage form. (Underscoring added.).

The Insuring Agreement in the 2010 Policy similarly provides, as follows:

> **The Company** [WVMIC] will pay those sums that the **insured** [UHP] becomes legally obligated to pay as **damages** because of a **claim** that is a result of a **medical incident** which occurs on or after the **retroactive date** applicable to such **insured** and which is first reported by the **insured** during the **policy period**. . . . the maximum amount **the Company** will pay to settle any **claim**, or **suit**, or verdict, or judgment, is limited as stated in Section IV; Limit of Insurance and in the **policy declarations**[.] (Underscoring added.).

Likewise, the General Conditions section of the 2010 Policy provides,

> [t]his is a claims-made and reported policy. This policy applies only to **claim(s)** that arise of out of a **medical incident** which occurs on or after the **retroactive date** stated in the **policy declarations** and **schedule of insureds** that are first made against an **insured** and reported to **the Company** by the **insured** during the **policy period**. (Underscoring added.).

Considering the 2010 Policy, as a whole, it is abundantly clear that in order to constitute a "*covered* medical incident(s) during the policy period," as provided for in the Limit of Insurance section of the policy, two things must be satisfied. First, the "medical incident"[13] must occur on or after the retroactive date of January 1, 2002. Second, the claim must be reported during the "Policy Period." The Mesh Plaintiffs' claims clearly meet both

---

[13]No one challenges that the Mesh Plaintiffs' claims arise out of medical incidents as defined in the 2010 Policy.

of these requirements: the surgeries giving rise to their medical malpractice claims were performed by Dr. Nutt in 2006 and 2007, well after the January 1, 2002, retroactive date, and their claims against UHP were first reported during the 2010 policy period. Because these claims were reported during the 2010 policy period, only the 2010 Policy applies. There is simply no language in the 2010 Policy that would allow the circuit court to resurrect prior policy periods, which had long-ago expired by their very terms.[14]

Having determined that the Mesh Plaintiffs' claims against UHP are "*covered medical incidents*" under the terms of the 2010 Policy, we look to the UHP's policy limits as set forth in the Policy Declarations for the 2010 Policy. In doing so, we observe that UHP has separate limits of insurance with a $3 million annual aggregate for medical incidents occurring after a retroactive date of January 1, 2002. The 2010 Policy expressly provides, as follows:

SCHEDULE OF INSUREDS

| Insured | Limit of Insurance | Retroactive Date |
|---|---|---|
| United Health Professionals, Inc. | $1,000,000 Each Medical Incident / $3,000,000 Annual Aggregate | 01/01/2002 |

Again, because the Mesh Plaintiffs' are unquestioningly "*covered* medical claims," as they clearly fall after the January 1, 2002, retroactive date and were asserted during the 2010

---

[14]*See supra* note 12.

policy period, the 2010 Policy reflects that UHP has its own $3 million annual aggregate limit for these claims.

## B. Shared or Separate Limits

WVMIC argues that notwithstanding the 2010 Policy's plain and unambiguous terms, UHP only intended to have separate policy limits for medical incidents occurring after January 1, 2008, and shared limits for medical incidents occurring before January 1, 2008, but after January 1, 2002. Because WVMIC has tendered the limits of Dr. Nutt's tail coverage for these medical incidents that occurred during 2006 and 2007, WVMIC argues that UHP shares in Dr. Nutt's limits and further coverage is not available. Again, we disagree.

We first observe that UHP obtained the limits of insurance that it expressly requested through the 2010 Policy. In its application for the 2010 Policy, UHP requested "separate" policy limits in the amount of "$1,000,000 / $3,000,000" with a "retroactive date" of "01/01/02." The 2010 Policy expressly states that WVMIC relied upon the statements made in the application in issuing the policy, which provides UHP with the limits it expressly requested. While WVMIC points to what occurred in 2008 to support its argument that it intended to be a sharing insured for medical incidents occurring prior to January 1, 2008, as discussed previously, the amendatory endorsement to the 2008 policy that first provided UHP

14

with separate policy limits did not alter the policy's retroactive date, which is used to determine whether a medical incident would be covered under the policy. Moreover, the fact remains that the policy before us is the 2010 Policy, whereas the 2008 policy expired by its own terms at the end of 2008.[15]

Second, there is nothing in Dr. Nutt's tail coverage to indicate that UHP would share in his separate limits of coverage. As the Legislature has explained, "'[t]ail coverage' or 'extended reporting coverage' is coverage that protects the health care provider [Dr. Nutt] against all claims arising from professional services performed while the claims-made policy was in effect and included in the policy but reported after the termination of the policy." W.Va. Code § 29-12B-3(f) (2013). *See also*, 7 Couch on Ins. § 102:28. ("[E]xtended reporting period or 'tail' coverage . . . is purchased from the first insurer and covers future claims made for incidents occurring during the time of the claims-made coverage."). Dr. Nutt's extended reporting endorsement provides that he will be covered for "any **medical incident** which occurred on or after the **retroactive date**" and during his employment with UHP, but which is first reported after his March 14, 2008, "termination date." The extended reporting endorsement further reflects that Dr. Nutt is the sole insured thereunder, providing as follows:

_____

[15]Technically, it expired at 12:01 a.m. on January 1, 2009.

| Name | Retroactive Date | Each Medical Incident | Aggregate |
|---|---|---|---|
| Mitchell E. Nutt, MD | 10/28/2002 | $1,000,000 | $3,000,000 |

Indisputably, no other insured is listed on this extended reporting endorsement as sharing in Dr. Nutt's limits, or otherwise. Conversely, the policies issued for years 2007 forward each specifically set forth in the policy declarations the express identity of which insureds have separate limits of coverage and which insureds share in those limits. Critically, there is no such sharing designation in Dr. Nutt's tail coverage and no sharing designation for UHP in the 2010 Policy.[16]

Other provisions of the 2010 Policy further support the conclusion that UHP does not share in Dr. Nutt's aggregate limits under his tail coverage. Section IV., C. states, as follows:

> Except as may otherwise be provided by endorsement to this **policy**, each **insured** for which no other separate limit of insurance is stated in the **policy declarations**, shall share the

---

[16]Further, WVMIC has not argued that the premium charged for Dr. Nutt's tail coverage was consistent with providing both him and UHP with coverage. *See Malempati v. Independent Inpatient Physicians, Inc.*, No. 12AP-565, 2013WL4245852 *9 (Ohio App. 10 Dist.) (Aug. 15, 2013) ("[Physician] testified that her insurance agent advised her that cheaper [tail] coverage might have been available if appellee purchased coverage only for herself and not also [for her former employer].").

> limit of insurance stated in the **policy declarations**; except that no **insured** may share in more than one limit of insurance under this policy. (Underscoring added.).

Accordingly, inasmuch as both UHP and Dr. Nutt have separate limits of insurance, under the terms of the 2010 Policy, we find that UHP does not share in Dr. Nutt's separate limits under his tail coverage.

### C. Policy reformation

WVMIC argues that the 2010 Policy should be reformed because UHP intended to have shared policy limits for medical incidents occurring prior to January 1, 2008, whereas the 2010 policy, as written, only provides UHP with separate policy limits for those medical incidents. In support of its argument, WVMIC directs this Court to the amendatory endorsement to the 2008 policy, which expressly states that UHP's corporate limits were changed from shared to separate "*effective* 01/01/2008." (emphasis added.).

WVMIC argues that the "effective" date on UHP's separate policy limits endorsement was actually the "retroactive" date, i.e., that the separate limits were applicable only to medical incidents which occurred after that date. There is nothing in the 2008 policy, however, including the amendatory endorsement, to indicate any change to the policy's "retroactive" date. This is not unlike when WVMIC first issued this claims-made policy in 2005. The policy's coverage went into effect on January 1, 2005, but its *retroactive* date was

17

January 1, 2002, thereby sweeping into the policy any medical incidents that might have occurred from January 1, 2002, forward. WVMIC did precisely the same thing in 2008, when it changed UHP's limits from shared to separate by an amendatory endorsement effective January 1, 2008, with a retroactive date of January 1, 2002, thereby bringing within those coverage limits any medical incident occurring after January 1, 2002.

Notwithstanding the fact that there was no change in the policy's "retroactive" date, either in 2008 or, for that matter, in its application for the 2010 Policy,[17] WVMIC wants this Court to rely upon the "effective" date on the amendatory endorsement to the 2008 policy as a "retroactive date," and then to use that as a springboard to rewrite the 2010 Policy to list UHP as a sharing insured for medical incidents that occurred between the policy's January 1, 2002, retroactive date and December 31, 2007. First, regardless of the coverage that may or may not have been negotiated for purposes of the 2008 policy, that policy has expired and is not applicable—the only policy under our consideration is the 2010 Policy. Second, it is clear that "retroactive date" is a term of art, which has been legislatively defined as "the date designated in the policy declarations, before which coverage is not applicable."[18] Third, as demonstrated in the quoted policy language above, the 2010 Policy is replete with

---

[17]As indicated previously, the 2010 Policy states that WVMIC relied upon the statements made in the application in issuing the policy.

[18]*See* W.Va. Code § 29-12B-3(e) (defining term "retroactive date"); *see also supra* note 8.

18

references to the policy's "retroactive" date; the policy defines "retroactive date as that date

specified in the **policy declarations**;" and the schedule of insureds in the policy declarations

lists the "retroactive date" for each named insured. Similar language is found in the 2008

policy. Consequently, we cannot conclude the terms "effective" and "retroactive" may be

used interchangeably in this instance.[19]

---

[19]We note that the record contains portions of a deposition transcript of a WVMIC senior claims consultant who explained that the "retroactive" date applies to the date of the *medical incident* under a claims-made policy, whereas the "effective" date on a policy endorsement means that a *claim* has to be made after that "effective" date in order for the endorsement to apply:

> Q. [A]nd if there would be . . . endorsements issued during the
> policy period, those would become part of the policy?
> A. Right.
> Q. And those endorsements, when they're issued, they have
> effective dates as to when they take effect?
> A. Right.
> Q. And then the claim would have to have been made after the
> effective date of that endorsement for that endorsement to apply,
> correct?
> A. Yes.
> . . . .
> Q. [T]he retroactive date applies to the date the medical incident
> occurs, right? That's the date you use - - the medical incident
> had to have occurred after the retroactive date?
> A. Yes.

While we do not rely on this deposition testimony in reaching our decision, we do observe that it is consistent with the legislative definition of "retroactive," as distinguished from the term "effective."

19

WVMIC essentially asks this Court to accept that it made what would be a glaring error in policy limits for a claims-made policy, and that it made that error not once, not twice, not three times, but four times. The policies for years 2008 through 2011 each provide UHP with separate limits of coverage with no restriction that such separate limits were applicable only to medical incidents occurring after January 1, 2008. Even the policy declarations for the 2011 policy, which issued *after* this declaratory judgment action was instituted and *after* the parties had already debated this coverage issue in the context of their settlement negotiations, reflects that UHP has separate limits with a retroactive date of January 1, 2002. If, in fact, these policies did not accurately reflect either the coverage UHP intended to acquire or the coverage WVMIC intended to provide, then logic compels the conclusion that WVMIC would have issued a policy in 2011 that accomplished the desired result.

As demonstrated above, WVMIC relied upon UHP's application for the 2010 Policy in which it expressly requested separate limits of coverage with a retroactive date of January 1, 2002—that is precisely the policy that WVMIC issued to UHP in 2010.[20] While WVMIC seeks a reformation that would effectively result in no further insurance coverage

---

[20]Similarly, in *Ohio Farmers Insurance Company v. Video Bank, Inc.*, 200 W.Va. 39, 44, 488 S.E.2d 39, 44 (1997), a case relied upon by WVMIC, we reversed a circuit court's order that reformed an insurance policy stating that "the written policy actually issued by Ohio Farmers Insurance Company conformed to Ms. McCourt's request[.]"

being available under the 2010 Policy for the Mesh Plaintiffs' claims,[21] during oral argument before this Court, counsel indicated that UHP wanted to change to separate limits beginning in 2008 in anticipation that these claims would be made against Dr. Nutt. Such argument certainly signals that UHP's objective was to obtain more, rather than less, coverage for itself through separate policy limits.

It bears repeating that "[i]t is only when the document has been found to be ambiguous that the determination of intent through extrinsic evidence become [sic] a question of fact[,]" *Payne v. Weston,*, 195 W.Va. 502, 507, 466 S.E.2d 161, 166 (1995), and that "[w]e will not rewrite the terms of the policy; instead, we enforce it as written." *Id.*, at 507, 466 S.E.2d at 166. Under the facts and circumstances presented in this case, and considering that there were sophisticated parties[22] on both sides of the policy in question, we cannot find that a policy reformation is warranted.

---

[21]Were this Court to begin rewriting insurance policies with the goal of excluding previously asserted claims that would otherwise be covered under a policy's plain and unambiguous terms, we would be sanctioning a course of particular peril. While we recognize that there may be a case where policy reformation is appropriate, such a result would be especially imprudent in a case, such as this, where the insured has already been released and can support its insurer's quest for reformation without personal risk.

[22]The Mesh Plaintiffs advise this Court that WVMIC's 2012 Annual Report reflects that it is the largest medical liability insurer in West Virginia, owning fifty-five percent of the medical malpractice market in this state. As such, WVMIC clearly understands both the manner in which claims-made polices operate and how policy language is to be written.

21

Based upon our discussion above, and consistent with our prior law, we apply the plain and unambiguous terms of the 2010 Policy to hold that UHP is a named insured with a separate annual aggregate limit of $3 million for the claims asserted by the Mesh Plaintiffs. Syllabus, *Keffer* 153 W.Va. 813, 172 S.E.2d 714; *see also*, Syl. Pt. 2, *Shamblin*, 175 W.Va. 337, 332 S.E.2d 639. This $3 million is in addition to the $3 million previously tendered to the respondents under Dr. Nutt's tail coverage. To be clear, and contrary to the circuit court's ruling, there are no insurance limits available under *prior* policy periods for the subject claims. The *only* additional insurance limit to be paid by WVMIC is UHP's separate annual aggregate of $3 million under the 2010 Policy.[23]

## IV. Conclusion

Based upon the foregoing, the decision of the Circuit Court of Kanawha County, West Virginia, is reversed and this case is remanded for entry of an order consistent with this opinion.

Reversed and remanded.

---

[23]Any remaining issues are disposed of by our ruling herein.